UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AARON WONG,

Plaintiff,

- against -

P.O. YOUNG YOO, Shield No. 27582, SERGEANT ANTHONY ALFANO, P.O. STEPHEN VIANI, Shield No. 21187, JAMES MANGONE, DETECTIVE LEONARD CIURCINA, Shield No. 5595,

Defendants.
-----------------------------------------------------------X

04 CV 4569 (CPS)(SMG)

THIRD AMENDED COMPLAINT AND JURY TRIAL DEMAND

Plaintiff, AARON WONG, by his attorney, ALAN D. LEVINE, ESQ., as and for his complaint herein, hereby alleges as follows:

**JURISDICTION**

1. This is a civil action, seeking compensatory and punitive damages and attorney's fees.

2. This action is brought pursuant to 42 U.S.C.§§ 1981, 1983, 1985 and the fourth, thirteenth and fourteenth amendments to the Constitution of the United States.

3. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343.

**VENUE**

4. Venue is properly alleged in the Eastern District of New York in that the acts complained of herein occurred within this District.

**JURY TRIAL DEMAND**

5. Plaintiff hereby demands a trial by jury of all issues in this action that are

so triable.

## PARTIES

6. At all times relevant hereto, plaintiff, AARON WONG, was and is a natural person, resident in the County of Richmond, City and State of New York.

7. At all times relevant hereto, defendant P.O. YOUNG YOO, Shield No. 27582 (hereinafter "YOO") was and is a natural person, employed as a police officer in the Police Department of the City of New York.

8. At all times relevant hereto, defendant SERGEANT ANTHONY ALFANO (hereinafter "ALFANO") was and is a natural person, employed as a sergeant in the Police Department of the City of New York.

9. At all times relevant hereto, defendant P.O. STEPHEN VIANI, Shield No. 21187 (hereinafter "VIANI") was and is a natural person, employed as a police officer in the Police Department of the City of New York.

10. At all times relevant hereto, defendant JAMES MANGONE (hereinafter "MANGONE") was and is a natural person, resident in the County of Richmond, City and State of New York.

11. Upon information and belief, defendant MANGONE is a retired member of the Police Department of the City of New York.

12. At all times relevant hereto, defendant DETECTIVE LEONARD CIURCINA, Shield No. 5595 (hereinafter "CIURCINA") was and is a natural person employed as both a detective in the Police Department of the City of New York and by defendant MANGONE at a Police Department-approved off-duty job.

13. Plaintiff is an African-American.

14. Defendant YOO is an Asian-American.

15. Defendants ALFANO, VIANI, MANGONE and CIURCINA are white.

16. Defendants are sued in both their individual and official capacities.

## FACTS COMMON TO ALL CAUSES OF ACTION

17. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "16" hereinabove as if more fully set forth at length herein.

18. On or about May 16, 2003, at approximately 4:22 P.M., plaintiff was lawfully operating a motor vehicle, registered to himself, on Jewett Avenue in the vicinity of Burnside Avenue in the County of Richmond, City and State of New York.

19. Upon information and belief the neighborhood in which the aforesaid streets intersect is predominately populated by members of the white race.

20. At the aforementioned time and place, plaintiff's girlfriend, Brooke Lopez, was a passenger in the aforesaid motor vehicle.

21. Needing to make a cell phone call, plaintiff pulled the vehicle into a cul de sac, where he backed into a marked parking space.

22. Nowhere in the cul de sac were there any visible signs marking it as private property or as off limits to members of the public.

23. Within one minute of his having backed the car into the aforesaid parking space, a pickup truck, operated by defendant MANGONE, pulled up and parked at a right angle to the vehicle plaintiff was sitting in, so as to block it.

24. Defendant MANGONE exited his vehicle, approached plaintiff's vehicle and leaned into the front driver's side window thereof.

25. Without waiting for plaintiff to say anything, defendant MANGONE began screaming at him, stating that he did not want "niggers" coming into the area, selling crack and leaving used condoms on the ground.

26. Plaintiff unsuccessfully attempted to reason with defendant MANGONE.

27. Defendant MANGONE told plaintiff he would call the police.

28. Plaintiff agreed with defendant MANGONE and told him he should call the police.

29. Defendant MANGONE, using a walkie-talkie type cell phone, called defendant CIURCINA to immediately come to the location where plaintiff and defendant MANGONE were.

30. Plaintiff exited his vehicle.

31. Plaintiff pushed defendant MANGONE's cell phone closed.

32. Defendant MANGONE shoved plaintiff against plaintiff's vehicle and held him there by pressing his forearm against plaintiff's neck.

33. Plaintiff offered no resistance, instead requesting that defendant MANGONE release him.

34. Defendant MANGONE pushed plaintiff against plaintiff's vehicle, causing the driver's side mirror to pop out of its bracket, unbroken.

35. Holding the mirror, plaintiff stated to defendant MANGONE, "Look what you did to my car."

36. Defendant MANGONE charged at plaintiff.

37. Plaintiff put up his hands to defend himself, thereby accidentally causing the unbroken mirror to scratch defendant MANGONE's face, in the area of his right eyebrow.

38. Plaintiff, fearing for his safety, attempted to flee.

39. Defendant MANGONE ran after plaintiff.

40. Blows were exchanged between plaintiff and defendant MANGONE.

41. At this point in the confrontation, Brooke Lopez, using a cell phone, telephoned 911.

42. Defendant MANGONE retrieved a circular saw from the back of his pickup truck and threw it twice against the windshield of the vehicle that plaintiff had been driving and in which Brooke Lopez was sitting, thereby smashing the windshield.

43. Plaintiff picked up the aforementioned circular saw from the ground, where it had fallen, and threw it at the windshield of defendant MANGONE's truck, shattering the windshield.

44. Defendant MANGONE then took a metal pipe from his truck and struck several blows with it on the hood of plaintiff's motor vehicle.

45. As defendant MANGONE resumed chasing plaintiff, plaintiff took a push broom with a long wooden handle from the back of defendant MANGONE's truck.

46. Plaintiff commenced walking backward with the broom out in front of him in a defensive posture as defendant MANGONE approached him, holding the aforementioned metal pipe in his hand.

47. Another vehicle pulled up next to plaintiff and defendant MANGONE.

48. Still holding the broom, and attempting to get away from defendant MANGONE, plaintiff jumped onto the hood of the car that had just pulled up and then jumped off the hood on the other side of the vehicle.

49. The driver of the vehicle that had just pulled into the area, upon information and belief defendant CIURCINA, exited his vehicle, took a metal level from the back of defendant MANGONE'S truck and, holding the metal level in his hand, joined defendant MANGONE, who was still holding the metal pipe and chasing plaintiff.

50. Plaintiff continued to move backwards, still holding the wooden push broom in his hands in a defensive posture.

51. Plaintiff suddenly found himself confronted by a person who is not a party to this action, who emerged from behind a bush, pointed a gun at plaintiff and ordered him to drop down onto the ground and put his hands on his head.

52. Plaintiff complied with the aforementioned non-party's order.

53. Defendants MANGONE and CIURCINA proceeded to beat and kick plaintiff so severely that he was badly injured and was rendered unconscious.

54. An ambulance arrived at the scene.

55. Approximately one minute later, a New York City Police Department vehicle, occupied by defendants YOO and VIANI, arrived on the scene.

56. While defendant MANGONE stood with his foot on plaintiff's neck, defendant YOO exited his vehicle and handed handcuffs to defendant CIURCINA, who proceeded to handcuff plaintiff.

57. The aforementioned non-party had left the scene prior to the arrival of the aforesaid Police Department vehicle.

58. A second Police Department vehicle, occupied by defendants ALFANO and a driver, arrived on the scene.

59. One of the ambulance attendants treated defendant MANGONE's aforementioned injury at the scene.

60. Upon information and belief, one or more of the individual defendants prevented the ambulance attendants from treating plaintiff's injuries and from transporting him to a hospital.

61. Defendant YOO placed plaintiff under arrest and placed him in the back seat of defendant YOO's Police Department motor vehicle.

62. Defendant MANGONE was not placed under arrest.

63. Defendants ALFANO, VIANI and defendant ALFANO's driver were approached by Brooke Lopez, who attempted to offer an account of the incident to them, but they refused to take a report or to listen to her.

64. Defendant CIURCINA picked up the aforementioned level, broom and pipe, which were now lying next to plaintiff's body and, upon information and belief, placed them back into defendant MANGONE's truck.

65. Defendant YOO retrieved a closed and locked knife that had fallen out of plaintiff's pocket.

66. Plaintiff used the aforesaid knife in the course of his employment.

67. Defendants YOO, ALFANO, VIANI and defendant ALFANO's driver made no inspection of plaintiff's vehicle nor did they impound it as evidence.

68. Rather, Ms. Lopez was instructed by one of the police officer defendants to drive the vehicle away from the scene, despite the fact that its windshield had been destroyed.

69. Plaintiff, despite his suffering from a severe and visible injury, was driven in defendant YOO's vehicle to the stationhouse of the 120th Precinct rather than to a hospital, in violation of NYPD Patrol Guide Procedure No. 210-04(1).

70. Upon arrival at the stationhouse, plaintiff was placed in a cell.

71. Approximately twenty minutes after arriving at the precinct, plaintiff asked for medical assistance.

72. Defendants YOO, ALFANO and VIANI attempted to dissuade plaintiff from going to the hospital.

73. However, plaintiff insisted on being taken to the hospital.

74. An EMS ambulance arrived at the precinct and took plaintiff to Saint Vincent's Hospital.

75. Plaintiff received some treatment at the aforementioned hospital and was then transported back to the 120th Precinct.

76. The following morning, plaintiff was arraigned in Criminal Court of the City of New York, County of Richmond, and was charged with assault in the second degree, a Class D felony; assault in the third degree, a Class A misdemeanor; criminal possession of a weapon in the fourth degree, a Class A misdemeanor; and harassment in the second degree, a violation.

77. Plaintiff was released on his own recognizance.

78. Plaintiff was compelled to appear in court approximately twelve times with regard to the charges against him.

79. At some point during the period in which charges were pending against plaintiff, the charge of assault in the second degree was reduced to a charge of menacing in the second degree, a Class A misdemeanor.

80. On or about June 29, 2004, all charges against plaintiff were dismissed.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(42 U.S.C. §1983)**

81. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "80" hereinabove as if more fully set forth at length herein.

82. The defendants violated plaintiff's right to the due process of law guaranteed to him by the fourth and fourteenth amendments to the Constitution of the United States in that defendants YOO, ALFANO, VIANI and CIURCINA, acting under color of state law, and defendant MANGONE, willfully participating in joint activity with defendants YOO, ALFANO, VIANI and CIURCINA, thus also acting under color of state law, without any cause or provocation whatsoever, brutally and severely beat plaintiff without probable cause to do so, falsely arrested and imprisoned him, denied medical treatment to him, and maliciously prosecuted him.

83. Because of the aforesaid acts committed by the defendants, plaintiff suffered a deprivation of the right to due process of law guaranteed to him by the fourth and fourteenth amendments to the Constitution of the United States, and, as a result, suffered a loss of his liberty; received serious and permanent physical injuries that necessitated his undergoing surgery and extensive dental and medical treatment;

suffered severe mental upset, anguish and disturbance, necessitating treatment therefor; had to expend large and continuing sums for medical, surgical, dental and psychotherapeutic treatment; and lost both an extensive period of time and an extensive amount of income from his employment.

84. By reason of the aforesaid unconstitutional and illegal actions taken against him by the defendants, plaintiff has been damaged in the amount of Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## (42 U.S.C §1981)

85. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "84" hereinabove as if more fully set forth at length herein.

86. The defendants, acting individually and in concert, solely because plaintiff is an African-American, intentionally discriminated against him, in violation of the thirteenth and fourteenth amendments to the Constitution of the United States, by, without any cause or provocation whatsoever, brutally and severely beating him, denying medical treatment to him, arresting him without probable cause, falsely imprisoning him and maliciously prosecuting him.

87. Because of the aforesaid acts committed by the defendants solely as a manifestation of discrimination against plaintiff because he is an African-American, plaintiff suffered a loss of his liberty; received serious and permanent physical injuries that necessitated his undergoing surgery and receiving extensive dental and medical

treatment; suffered severe mental upset, anguish and disturbance, necessitating treatment therefor; had to expend large and continuing sums for medical, surgical, dental and psychotherapeutic treatment; and lost both an extensive period of time and an extensive amount of income from his employment.

88. By reason of the aforesaid actions taken against him by the defendants, acting individually and severally, for the purpose of discriminating against him solely because he is an African-American, plaintiff has been damaged in the amount of Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(42 U.S.C. §1985)**

89. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "88" hereinabove as if more fully set forth at length herein.

90. Solely because plaintiff is an African-American who was present in a predominately white neighborhood, defendants conspired to deprive him of both the equal protection of the laws and of the equal privileges and immunities under the laws that are guaranteed to him by the fourteenth amendment to the Constitution of the United States by, without any cause or provocation whatsoever, brutally and severely beating him, arresting him without probable cause, denying medical treatment to him, falsely imprisoning him and maliciously prosecuting him.

91. Because of the aforesaid conspiracy and acts in furtherance thereof committed by the defendants, plaintiff suffered a deprivation of his right to the equal protection of the laws and to the equal privileges and immunities under the laws guaranteed to him by the fourteenth amendment to the Constitution of the United States, and, as a result, suffered a loss of his liberty; received serious and permanent physical injuries that necessitated his undergoing surgery and extensive dental and medical treatment; suffered severe mental upset, anguish and disturbance, necessitating treatment therefor; had to expend large and continuing sums for medical, surgical, dental and psychotherapeutic treatments; and lost both an extensive period of time and an extensive amount of income from his employment.

92. By reason of the aforesaid conspiracy and actions taken against him by the defendants, acting individually and severally, for the purpose of discriminating against him solely because he is an African-American, plaintiff has been damaged in the amount of Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages.

WHEREFORE, plaintiff, AARON WONG, demands judgment against defendants, P.O. YOUNG YOO, Shield No. 27582, SERGEANT ANTHONY ALFANO, P.O. STEPHEN VIANI, Shield No. 21187, JAMES MANGONE and DETECTIVE LEONARD CIURCINA, Shield No. 5595 as follows:

FIRST CAUSE OF ACTION: Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages;

SECOND CAUSE OF ACTION: Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages;

THIRD CAUSE OF ACTION: Five Million ($5,000,000.00) Dollars and demands an additional Five Million ($5,000,000.00) Dollars as punitive damages.

Plaintiff, in addition, demands the costs and disbursements of this action, including his attorney's fees, pursuant to 42 U.S.C. §1988.

Dated: Kew Gardens, New York
March 1, 2007

ALAN D. LEVINE, ESQ. (AL 3634)
Attorney for Plaintiff
80-02 Kew Gardens Road
Suite 1010
Kew Gardens, New York 11415
(718) 793-6363
File No: 1972