UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X

Aaron Wong,                                          04-CV-4569
                                    Plaintiff,       (CPS)(ALC)

        - against -

Police Officer Young Yoo, Sergeant Anthony           MEMORANDUM
Alfano, Police Officer Stephen Viani,                OPINION &
James Mangone, and Detective Leonard                 ORDER
Ciurcina,

                                    Defendants.

--------------------------------------------X

Police Officers Young Yoo and Stephen
Viani,

                Third-Party Plaintiffs,

        - against -

The City of New York,

                Third-Party Defendant.

--------------------------------------------X

SIFTON, Senior Judge.

        On September 25, 2004, plaintiff Aaron Wong commenced this

action against defendants James Mangone, police officer Young

Yoo, police officer Stephen Viani, sergeant Anthony Alfano, and

detective Leonard Ciurcina.  Plaintiff alleges that defendants

used excessive force against him, falsely arrested and imprisoned

him, denied medical treatment to him, and maliciously prosecuted

him, in violation of 42 U.S.C. § 1983.  He also alleges that

defendants intentionally discriminated against him, in violation

of 42 U.S.C. § 1981, and conspired to deprive him of his rights

under the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1985.  On June 1, 2007, defendants Yoo and Viani filed a third-party complaint against third-party defendant the City of New York (the "City"), alleging that they were denied their right to representation and seeking indemnification.

Presently before this Court are defendants' separate motions for summary judgment on plaintiff's claims, as well as third-party defendant City's motion for summary judgment on third-party plaintiffs Yoo's and Viani's claims.  For the reasons set forth below, defendants' motions are granted in part and denied in part, and third-party defendant's motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the deposition testimony, affidavits, exhibits, and Rule 56.1 statements submitted by the parties in connection with this matter.  Disputes are noted.

### *Events of May 16, 2003*

On the afternoon of May 16, 2003, plaintiff was driving with his girlfriend, Brook Lopez, on Staten Island in New York. Deposition Testimony of Aaron Wong dated February 13 and March 22, 2006 ("Pl. Dep.") at 18, 137, 148-49.  Ms. Lopez, a hispanic female who was 19 years old at the time, had plans to purchase a Playstation video game system for plaintiff, a 5'9", 145-pound,

African American male who had celebrated his 21st birthday the day before. *Id.* at 10-11, 133, 137-38; Deposition Testimony of Brook Lopez ("Lopez Dep.") at 11, 38-39. On the way to an outlet mall, while driving on Jewett Avenue, plaintiff placed a call on Ms. Lopez' cell phone to two of his friends. Pl. Dep at 149; Lopez Dep. at 45, 75. Ms. Lopez scolded him for using the cell phone while driving and asked him to pull over. Lopez Dep. at 45-46.

Since there was no place to pull over on Jewett Avenue, plaintiff took a left turn near Burnside Avenue and pulled into a driveway leading to a parking lot located at 168 Ravenhurst Avenue. *Id*; Pl. Dep. at 152; Deposition Testimony of James Mangone ("Mangone Dep.") at 13. According to plaintiff, the driveway looked more like a public street than a private driveway. Pl. Dep at 153. A residential complex was adjacent to the parking lot. *Id.* at 154. Plaintiff put his car in reverse and backed up into a parking spot against a wall. *Id.* While plaintiff was on the phone, a truck pulled in front of plaintiff's car, blocking it. *Id.* at 158; Lopez Dep. at 57. A 6'1", 250-pound, white male, later identified as defendant James Mangone, exited the truck and approached plaintiff's car. Pl. Dep at 159, 161; Mangone Dep. at 29-30.

The parties dispute the nature of subsequent events. According to plaintiff and Ms. Lopez, defendant Mangone stuck his

head and shoulders through the driver's side window of
plaintiff's car, pushing the side-view mirror in toward the car,
and yelled words to the effect of:

> I'm tired of you niggers being here.  I'm tired of you
> niggers always here with your coke and your crack, and you
> throw your dirty [vials] on the floor and you take your
> dirty condoms after you finish fucking and put them on the
> floor.  I'm tired of this shit.  You niggers don't belong
> here. . . . Do you know anybody here?  I bet you don't know
> anybody here.  Who do you know here?  You niggers don't know
> anybody here.

*Id.* at 159-60, 174-76; Lopez Dep. at 60-61.  According to
defendant Mangone, however, using a moderate tone of voice,
defendant Mangone asked plaintiff and Ms. Lopez what their
business was in the parking lot without touching or leaning on
plaintiff's car.  Mangone Dep. at 53-54, 57.  Defendant Mangone
alleges that plaintiff replied, "none of your fucking business."
*Id.* at 53.  There is no dispute, however, that plaintiff falsely
informed defendant Mangone that he knew someone who lived in the
complex.  Mangone Dep. at 53-54; Pl. Dep. at 164.

Plaintiff and Ms. Lopez allege that they repeatedly asked
defendant Mangone to allow them leave the parking lot.  Pl. Dep.
at 167; Lopez Dep. at 62.  According to them, defendant Mangone
stated that he would not allow them to leave, and that he was
going to call 911 and the police.  Pl. Dep. at 167; Lopez Dep. at
62.  Defendant Mangone alleges, however, that plaintiff appeared
"enraged" following their exchange and bolted out of his car,
opening his car door quickly and hitting defendant Mangone in the

hip with the driver's side-view mirror in the process.  Mangone
Dep. at 56.  At that point, according to defendant Mangone, he
told plaintiff that he would call 911.  *Id.* at 57.  According to
plaintiff, however, plaintiff exited his car to fix the side-view
mirror defendant Mangone had pushed in when he leaned into the
car and to "get [defendant Mangone] away from the car."  Pl. Dep
at 177.  There is no dispute that defendant Mangone took his
phone from his belt and, rather than calling 911, used the Nextel
function to call a man later identified as defendant Leonard
Ciurcina, who he asked to "come to the back."  Mangone Dep at 58;
Pl. Dep. at 180, 182.

There is no dispute that while defendant Mangone was using
his phone, plaintiff slapped the phone away from defendant
Mangone's hand, causing it to fall to the ground.  Mangone Dep.
at 59; Lopez Dep. at 65; Deposition Testimony of Aaron Wong dated
August 21, 2008 ("Pl. Dep II") at 51-52.  Plaintiff alleges that
he heard defendant Mangone say a name into the phone and realized
that he was not calling the police or someone who would
"deescalate the situation."  Pl. Dep. II. at 52.  According to
plaintiff, defendant Mangone then "charged" at plaintiff and
shoved him into the front of the driver's side of the car,
forcing the driver's side-view mirror frame in toward the car and
causing the mirror itself to pop out of its frame.  Pl. Dep. at
183-85, 190.  Plaintiff caught the mirror.  *Id.* at 185.

Defendant Mangone denies having pushed plaintiff into his car or causing the mirror to pop out of its frame, alleging that the mirror popped out when plaintiff opened the door of his car too quickly, hitting defendant Mangone in the hip with the mirror frame.  Mangone Dep. at 59-61.

There is no dispute that after the mirror popped out of its frame, plaintiff hit defendant Mangone on the face with the mirror, cutting him above and underneath one of his eyes and causing significant bleeding.[1]  Mangone Dep. at 61; Lopez Dep. at 69; Pl. Dep. at 185.  Plaintiff and Ms. Lopez allege that before plaintiff hit defendant Mangone with the mirror, defendant Mangone "walked up on" plaintiff and "was dodging at him with his fist up."  Pl. Dep at 185; Lopez Dep. at 67.  Defendant Mangone alleges that plaintiff "picked the mirror up off the floor and smashed [defendant Mangone] in the face with it."  Mangone Dep. at 59-61.

At this point defendant Mangone returned to his truck, and alleges that he saw plaintiff lean inside his car and reemerge with an open knife in his hand.  *Id.* at 63-65.  Plaintiff testified that after hitting Mangone with the mirror, he ran to the back of his car, and denies ever having reached for or used a knife during the altercation.  Pl. Dep. at 191, 226.  Defendant

---

[1] At his deposition, plaintiff recalled hitting defendant Mangone on the right side of his face, Pl. Dep. at 187, while defendant Mangone recalled plaintiff hitting him on the left side of his face.  Mangone Dep. at 61.  This dispute is immaterial.

Mangone then grabbed a circular saw from a toolbox in the back of his truck and threw it in plaintiff's direction. Mangone Dep. at 66-68. The saw hit the windshield of plaintiff's car, inside of which Ms. Lopez was sitting, causing the windshield to crack and shatter but not to break. *Id*; Pl. Dep at 200-05; Lopez Dep. at 71. Plaintiff picked up the saw where it had fallen and threw it at defendant Mangone's truck, causing the truck's windshield to crack and shatter without breaking. Mangone Dep. at 68; Pl. Dep. at 207-08.

Defendant Mangone then returned to his truck and retrieved a metal pipe. Mangone Dep. at 69-70. He struck plaintiff's car more than once with the pipe, further damaging the windshield and the hood. *Id.* at 71-72; Pl. Dep. at 213. Meanwhile, plaintiff ran to the back of defendant Mangone's truck and retrieved a wooden broom handle. Mangone Dep. at 73. Ms. Lopez screamed for help and called 911 on her cell phone. Lopez Dep. at 74.

At this point, according to plaintiff, a blue car arrived on the scene and sped directly toward plaintiff. Pl. Dep. at 215. Plaintiff alleges that he jumped over the top of the car to avoid being run over, and a white male, later identified as defendant Ciurcina, a New York City Police Detective who was off-duty at the time, exited the car. *Id.* at 216-17. Defendant Ciurcina performed masonry work for defendant Mangone during his off-duty hours, and it was defendant Ciurcina that defendant Mangone had

contacted using the Nextel function of his phone.  Deposition
Testimony of Leonard Ciurcina ("Ciurcina Dep.") at 7-8, 14-15;
Mangone Dep. at 58.  There is no dispute that on the afternoon of
May 16, 2003, defendant Ciurcina was dressed in plain clothes and
did not have his shield.  Ciurcina Dep. at 26.  According to
plaintiff, defendant Ciurcina then either exited the car with a
level in his hand, or grabbed a level from defendant Mangone's
truck, and began swinging the level at plaintiff.  Pl. Dep. at
216-17.  Defendant Mangone alleges, however, that he dropped the
metal pole and himself grabbed the level from his truck.  Mangone
Dep. at 74.  Both defendants Mangone and Ciurcina allege that
defendant Ciurcina did not arrive on the scene until a few
minutes later.  *Id.* at 81; Ciurcina Dep. at 18.

Plaintiff and defendant Mangone then began to strike at each
other with the broom handle and the pipe or the level,
respectively, in a sword-fighting manner.  At some point,
plaintiff either backed away or turned and ran from the parking
lot around a corner toward Jewett Avenue.  Defendant Mangone
followed.  Pl. Dep. at 219-21; Mangone Dep. at 74-78.  Ms. Lopez
recalls that seconds after plaintiff and defendant Mangone left
her field of vision, defendant Ciurcina arrived on the scene,
grabbed a level from defendant Mangone's truck, and ran after
plaintiff and defendant Mangone.  Lopez Dep. at 80-81.  During
the scuffle, plaintiff alleges that his clothes were torn up and

ripped off, and that his wallet, asthma pump and knife fell out of his pocket. Pl. Dep. at 224-25.

According to plaintiff, a third white male then arrived on the scene, later identified as non-party Port Authority police officer Robert Essex, who lived in a nearby house and had learned of the fight. *Id*. at 233-35; Affidavit of Robert Essex[2] ("Essex Aff.") ¶ 1. Officer Essex recalls that plaintiff was bleeding from his face and appeared dazed when he encountered him. Essex Aff. ¶ 1. Officer Essex pointed his gun at plaintiff and ordered plaintiff to stop walking and to drop his weapon. According to Officer Essex, an unidentified white male then approached plaintiff from behind and, without warning, hit plaintiff over the right side of his head with a level. *Id.* Officer Essex then pointed his gun at the unidentified white male who had struck

---

[2] At oral argument, counsel for defendant Ciurcina objected to the Essex affidavit, arguing that I should not consider it because prior to receiving plaintiff's opposition papers, defendants did not know the identity of the third man to arrive at the scene and therefore had no opportunity to interview or depose Officer Essex. The record does not support this argument. Officer Essex's identity was established at least as of the date of the completion of the New York City Police Department's Internal Affairs Bureau ("IAB") investigation of this matter in June 2006, during the course of which Officer Essex was interviewed. *See* Declaration of Jeffrey S. Dantowitz ("Dantowitz Decl.") Ex. A (copy of IAB findings report dated June 22, 2006, including summary of Officer Essex's interview). A letter dated October 24, 2007 from the New York City Office of Corporation Counsel to Magistrate Judge Gold states that the IAB files would be provided to the parties on October 27, 2006. That the IAB files were, in fact, produced to the parties is confirmed by Magistrate Judge Gold's docket entry dated January 8, 2007. I find that each of the parties had an equal opportunity to identify and interview or depose Officer Essex following the disclosure of the IAB files and prior to the close of discovery. Further, at oral argument, counsel for plaintiff stated that he had never received any interrogatories or document requests relating to the identity or testimony of Officer Essex. Nor has this issue been raised before or ruled upon by a Magistrate Judge. Accordingly, since the Essex Affidavit is otherwise admissible, for the purposes of this motion, I will consider it.

plaintiff. The white male dropped the level and told Officer Essex he was "on the job," which Officer Essex interpreted to mean that the man was a police officer. *Id.*

Plaintiff does not remember what transpired after Officer Essex ordered him to stand down, but recalls waking up lying face down with defendant Mangone's foot on his neck and defendant Ciurcina's knee on his back, with defendant Cirucina holding his hands behind his back. Pl. Dep. at 238-40. Ms. Lopez also recalls turning the corner from the parking lot and coming upon the three men in this position. Lopez Dep. at 82-83, 91, 93-94. Plaintiff's mouth was partially dried shut with blood, and upon regaining consciousness, he spit out three or four pieces of his teeth. Pl. Dep. at 241-42.

In contrast, according to defendant Mangone, after plaintiff ran from the parking lot around the corner toward Jewett Avenue, defendant Mangone followed and came upon plaintiff lying face down on the ground with a crowd surrounding him. Mangone Dep. at 78. Defendant Mangone knelt down next to plaintiff. *Id.* at 81. At this point, defendants Mangone and Ciurcina allege that defendant Ciurcina arrived on the scene. *Id.* at 81; Ciurcina Dep. at 18-19. Defendant Ciurcina recalls that when he reached defendant Mangone, Mangone told him, "A male just tried to stab me." Ciurcina Dep. at 19. Defendant Mangone recalls that at some point, he put his knee on plaintiff's back "to make sure he

wouldn't go anywhere," and defendant Ciurcina testified that he grabbed plaintiff's arms and put them behind his back. Mangone Dep. at 90, Ciurcina Dep. at 22. Both defendants Mangone and Ciurcina noticed that plaintiff was bleeding from his head and face. Mangone Dep. at 81, Ciurcina Dep. at 23.

At some point thereafter an ambulance and two uniformed police officers, later identified as defendants Yoo and Viani, arrived. Pl. Dep. at 243. Defendant Yoo is an Asian male, and his partner, defendant Viani, is a white male. Ciurcina Dep. at 25; Deposition Testimony of Young Yoo ("Yoo Dep.") at 9; Deposition Testimony of Stephen Viani ("Viani Dep.") at 7. Defendant Ciurcina does not recall whether he identified himself as a police officer to defendants Yoo and Viani, but testified that he probably did. Ciurcina Dep. at 26. According to defendant Ciurcina, either defendant Yoo or defendant Viani handed him handcuffs, and defendant Ciurcina then handcuffed plaintiff. *Id*. Plaintiff and defendant Mangone also recall that defendant Ciurcina handcuffed plaintiff. Pl. Dep. at 247; Mangone Dep. at 89.

Defendants Yoo and Viani recall the progression of events after their arrival somewhat differently. They allege that upon arrival, they observed a crowd of people in the parking lot, and saw two individuals later identified as plaintiff and defendant Mangone standing up among them. Yoo Dep. at 11-12; Viani Dep. at

9.  They testified that they did not observe any injuries on
plaintiff's body, but defendant Yoo stated that he noticed
defendant Mangone was bleeding heavily from his forehead.  Yoo
Dep. at 12-14, 26; Viani Dep. at 23.  Defendant Viani undertook
crowd control, Viani Dep. at 9-10, while defendant Yoo approached
defendant Mangone and asked him what had happened.  Yoo Dep. at
14.  Defendant Mangone related his version of events to defendant
Yoo, namely that he had asked plaintiff and Ms. Lopez what
business they had in the parking lot, that plaintiff had
responded rudely, and after a brief shouting match, that
plaintiff had attacked defendant Mangone by striking him in the
face with the car's side-view mirror.  *Id*. at 14-15, 17, 20-24;
Mangone Dep. at 84-86.  Defendant Mangone also showed defendant
Yoo the knife, and told him that plaintiff had threatened him
with it.  According to defendant Mangone, the knife was open, but
defendant Yoo recalls that it was closed.  Yoo Dep. at 27-28;
Mangone Dep. at 86.  Defendant Yoo also recalls that defendant
Mangone identified himself to defendant Yoo as a police officer
and showed him a shield, and defendant Viani testified that
defendant Yoo told him that Mangone had stated he was a police
officer.  Yoo Dep. at 29-30; Viani Dep. at 14.

    After conferring with defendant Viani, defendant Yoo alleges
that he approached plaintiff and asked him what had happened.
Yoo Dep. at 31.  Plaintiff, however, does not recall having any

conversation with defendant Yoo prior to his arrest.  Pl. Dep. at
246.  According to defendant Yoo, plaintiff's story was "pretty
similar" to defendant Mangone's version of events, except that
plaintiff denied having responded rudely to defendant Mangone.
Yoo Dep. at 32, 36-37.  Defendant Yoo alleges that plaintiff did
not report that defendant Mangone had threatened him or pushed
him first, and that he admitted he had struck defendant Mangone
with the mirror in self-defense.  *Id*. at 39-40, 42-43.  Defendant
Yoo further alleges that he showed the knife to plaintiff and
asked him where it had come from, and that plaintiff replied that
the knife had fallen out of his pocket.  *Id*. at 46-47.  According
to defendant Yoo, plaintiff did not inform him that Officer Essex
had pointed his gun at him or that he had been knocked to the
ground, nor did he tell him that defendant Mangone had blocked
plaintiff's car with his truck and used racial slurs against him.
*Id*. at 47-48, 64.  After conferring with defendant Viani,
defendant Yoo informed plaintiff that he was under arrest.  *Id*.
at 48.  According to defendants Yoo and Viani, defendant Yoo then
personally handcuffed plaintiff.  *Id*. at 50-51; Viani Dep. at 16.
Defendants Yoo and Viani then placed plaintiff in their police
vehicle.  Yoo Dep. at 61.

At some point thereafter, defendant Alfano, a New York City
Police Sergeant, arrived.  *Id*. at 49-50.  Defendant Yoo told
defendant Alfano, "sergeant this is what we have.  It's an

assault . . . Mangone is the victim, Wong was the one who attacked him." *Id*. at 49.  Defendant Yoo also testified that he related plaintiff's and defendant Mangone's stories to defendant Alfano, told him that he and defendant Viani had arrested plaintiff, and that defendant Alfano approved the arrest.  *Id*. at 50.  Defendant Alfano further recalls that as part of the arrest verification process, he spoke to both defendant Mangone and plaintiff about their versions of events, Deposition Testimony of Anthony Alfano ("Alfano Dep.") at 17-19, 32-33, but neither defendant Mangone nor plaintiff recall speaking to defendant Alfano on May 16, 2003.  Mangone Dep. at 96-97; Pl. Dep. at 251.  Defendant Alfano testified that he did not see any blood on plaintiff's body or clothing.  Alfano Dep. at 11, 22.

According to plaintiff, defendant Yoo first asked him for his version of events after he was handcuffed and placed in the police car.  Pl. Dep. at 244, 248-50.  Plaintiff alleges that defendant Yoo came over to him "sarcastically" and laughed at him while he asked plaintiff what had happened.  *Id*. at 249-50.  According to plaintiff, after defendant Yoo asked him whether he had tried to stab defendant Mangone, and plaintiff denied having tried to stab him, *id*. at 250, plaintiff "got the feeling that [defendants Yoo and Viani] didn't really care what was right or wrong at that point so [he] didn't comment anymore."  Pl. Dep. II. at 114.  Plaintiff alleges that he never related his side of

the story to the defendant officers. *Id.* Defendant Yoo recalls
that at this point, plaintiff told him that he, and not defendant
Mangone, was the victim, and that defendant Yoo was arresting him
improperly. Yoo Dep. at 61.

There is no dispute that medical personnel present on the
scene attended to defendant Mangone's facial injuries, but did
not treat plaintiff for any injuries. Mangone Dep. at 95-96; Pl.
Dep. at 243, 248; Yoo Dep. at 59. Defendant Yoo testified that
he asked plaintiff at least twice whether he wanted medical
treatment, but plaintiff responded, "No, no, no, I want you to
listen to me, listen to what I'm telling you." Yoo Dep. at 60.
When defendant Yoo said that plaintiff was "not making any
sense," plaintiff allegedly responded, "Fine, forget it." *Id.*
Defendant Alfano recalls that an emergency medical technician
("EMT") approached him, informed him that plaintiff was refusing
medical aid, and asked him to try to change plaintiff's mind
about accepting treatment and going to the hospital. Alfano Dep.
at 11-12. Defendant Alfano alleges that he asked plaintiff if he
wanted treatment, and plaintiff refused. *Id.* at 11. Plaintiff
testified that no one asked him if he wanted medical treatment
while at the scene, nor did he affirmatively request medical
treatment. Pl. Dep. at 248, 252.

Defendant Yoo collected the knife and the side-view mirror
and vouchered them as evidence from the scene. Yoo Dep. at 63-

64; *see also* Declaration of Alan D. Levine ("Levine Decl.") Ex. O
(copy of property voucher for the knife and the mirror). There
is no dispute, however, that none of the defendant officers
vouchered the pipe, the level, or the broom, nor did they examine
plaintiff's car or defendant Mangone's truck. Yoo Dep. at 25-26,
32-35, 63-64; Viani Dep. at 25, 27; Alfano Dep. at 21, 23. Ms.
Lopez approached defendant Yoo, identified herself as plaintiff's
girlfriend, and said that she was in plaintiff's car during the
fight between plaintiff and defendant Mangone. Yoo Dep. at 53-
54. Ms. Lopez recalls informing both defendants Yoo and Viani
that she wanted to speak with them and being told to "wait at the
car." Lopez Dep. at 107, 117-18. However, none of the defendant
officers ever asked Ms. Lopez for her version of events. Yoo
Dep. at 53-55; Lopez Dep. at 117. Defendant Ciurcina left the
scene without speaking to any of the defendant officers.
Ciurcina Dep. at 30, 52. Officer Essex states that he approached
defendant Alfano at least twice, identified himself as a police
officer, and told him that he wanted to describe what had
occurred, but that defendant Alfano "waived [him] off, indicating
that he did not want to speak to [him]." Essex Aff. ¶ 2.

Defendants Yoo and Viani then drove plaintiff in their
police car to the 120th Precinct for arrest processing. Yoo Dep.
at 66. While defendant Viani parked the car, defendant Yoo
escorted plaintiff to a small holding cell. *Id.* at 70; Pl. Dep.

at 253. In the holding cell, about 20 minutes after arriving at the precinct, plaintiff informed either defendant Yoo or another non-party officer that he was not feeling well and that his head hurt. Yoo Dep. at 71; Pl. Dep. at 256-58. According to plaintiff, he was "bleeding profusely nonstop" at this time and spitting up blood. Pl. Dep. at 253, 323-24. Plaintiff requested to be taken to the hospital, Yoo Dep. at 72-73; Pl. Dep. at 256, and defendant Viani escorted plaintiff to St. Vincent's hospital about 20 minutes later. Pl. Dep. at 259-30; Viani Dep. at 34-37.

At the hospital, plaintiff was diagnosed with a right mandible fracture and facial abrasions. *See* Levine Decl. Ex. Q (copy of St. Vincent's medical report dated May 16, 2003). He was treated and eventually returned to the precinct and placed in a general holding cell for the night. Yoo Dep. at 77-78. There is no dispute that plaintiff's injuries eventually required multiple hospital visits and at least two surgeries to correct the damage to plaintiff's jaw. *See* Levine Decl. Ex. R (copies of St. Vincent's "Operative Reports" corresponding to surgeries performed on May 22, 2003 and September 11, 2003, and detailing plaintiff's relevant medical history).

### *Prosecution of Plaintiff*

Later in the evening of May 16, 2003, defendant Yoo met with an Assistant District Attorney ("ADA") at the criminal court on Staten Island. Yoo Dep. at 79. He brought plaintiff's arrest

paperwork with him, informed the ADA of his version of the events of that afternoon, and signed a sworn criminal complaint against plaintiff. *Id.* at 80. The complaint stated, in relevant part, as follows:

> Deponent states that he is informed by James Mangone, that the defendant with intent to cause physical injury the informant [sic] did cause such injury to the deponent [sic] by means of a dangerous instrument, to wit: a side view mirror, in that the defendant did hit the informant in the face with said dangerous instrument, causing the informant to suffer physical injuries including but not limited to lacerations to the face and nose, as well as substantial pain, annoyance, and alarm.

Levine Decl. Ex. N (copy of criminal complaint dated May 16, 2003). Defendant Yoo was never called to appear and did not appear in any court proceedings against plaintiff. Yoo Dep. at 80.

The next day, plaintiff was arraigned and charged with assault, criminal possession of a weapon, and harassment. Pl. Dep. at 362; Levine Decl. Ex. N. Plaintiff pleaded not guilty and was released on his own recognizance, but was compelled to appear between eight and ten times in court over the next year and a half in connection with the charges. Pl. Dep. II at 102-04. The charges were eventually dismissed for unknown reasons. *Id.* at 104. A report issued by the New York City Police Department's ("NYPD") Internal Affairs Bureau ("IAB") on June 22, 2006, states that "the criminal case against [plaintiff] was dismissed due to [defendant] Mangone's lack of cooperation with

the SI DA's office."  Declaration of Jeffrey S. Dantowitz

("Dantowitz Decl.") Ex. A (copy of IAB findings report dated June

22, 2006).  Defendant Ciurcina also testified that defendant

Mangone told him the District Attorney's Office had dropped the

charges against plaintiff because defendant Mangone had failed to

appear in court.  Ciurcina Dep. at 37-38.  According to defendant

Ciurcina, defendant Mangone failed to appear in court because the

District Attorney's Office mailed his subpoenas to the wrong

address.  *Id.* at 38.  In contrast, defendant Mangone testified

that he did once travel to criminal court in relation to

plaintiff's case, where, after waiting "all morning," an ADA told

him that plaintiff "had copped a plea to disorderly conduct and

that the case was over."  Mangone Dep. at 100.

### *Procedural History and Defendant Yoo and Viani's Requests for Representation*

On August 1, 2004, and September 1, 2004, the Civilian

Complaint Review Board ("CCRB") forwarded complaints filed by

plaintiff's mother and Ms. Lopez, respectively, concerning

plaintiff's arrest to the IAB.  Dantowitz Decl. Ex. A.  In

October of 2004, the case was reviewed by the IAB and closed as

unsubstantiated.  *Id.*

On October 25, 2004, plaintiff commenced this lawsuit

against defendants Mangone, Yoo, and other unidentified

defendants in connection with the events of May 16, 2003.  On

February 4, 2005, an Assistant Corporation Counsel of the New

York City Office of Corporation Counsel ("Corporation Counsel")
filed a notice of appearance on behalf of defendant Yoo.  Also in
February of 2005, the IAB again reviewed the CCRB complaints
brought by plaintiff's mother and girlfriend, and again closed
the case as unsubstantiated.  *Id.*

On April 21, 2005, the IAB commenced a third investigation
into the May 16, 2003 incident, during which all parties to this
lawsuit except defendant Mangone, as well as Ms. Lopez, Officer
Essex, and two EMTs were interviewed.  Dantowitz Decl. ¶ 3; *Id.*
Ex. A.  On June 22, 2006, the IAB issued its investigative
findings regarding the incident.  *Id.* ¶ 4, Ex. A.  It found,
among other things, that defendants Yoo and Viani had violated
NYPD rules and regulations by failing to provide medical
assistance to plaintiff at the scene of the incident.

By letter dated January 2, 2007, Corporation Counsel
notified defendant Yoo that it could no longer represent him
because it was unable to make the requisite findings under New
York General Municipal Law § 50-k(2).[3]  *Id.* Ex. B (copy of

---

[3] New York General Municipal Law § 50-k(2) provides, in relevant part,
as follows:

> At the request of the employee . . . the city shall provide for the
> defense of an employee of any agency in any civil action or proceeding
> in any state or federal court . . . arising out of any alleged act or
> omission which the corporation counsel finds occurred while the employee
> was acting within the scope of his public employment and in the
> discharge of his duties *and was not in violation of any rule or
> regulation of his agency at the time the alleged act or omission
> occurred.*

N.Y. Gen. Mun. Law § 50-k(2) (emphasis added).

letter).  Among the individual defendants that had been named by that time, Corporation Counsel had only filed a notice of appearance on behalf of defendant Yoo.  On January 29, 2007, Magistrate Judge Gold granted Corporation Counsel's request to withdraw as attorney for defendant Yoo.  On June 1, 2007, defendants Yoo and Viani filed a third-party complaint against the City alleging that they were denied their right to representation and seeking indemnification.

The present motions for summary judgment followed on March 16, 2009.

**DISCUSSION**

## I.   <u>Standard for Summary Judgment</u>

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003).  A fact is material when it

"might affect the outcome of the suit under the governing law."
*Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

## II.  **Plaintiff's Claims**

With the exception of defendants Yoo and Viani, who filed a joint motion, each individual defendant separately moves for summary judgment on all of plaintiff's claims.

### A.  *Section 1983 Claims*

Section 1983 of Title 42 of the United States Code[4] "provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865, 875 (2d Cir. 1994).  "To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States" or federal law.  *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999) (citing *Dwares v. City of N.Y.*, 985 F.2d 94, 98 (2d Cir. 1993)).  Further, "[i]t is well settled in [the Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v.*

---

[4] Section 1983 provides, in relevant part, as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

*Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks and citation omitted).

1.   ***Excessive Force***

Plaintiff first claims that defendants Mangone and Ciurcina violated § 1983 by using excessive force against him.[5] "[E]xcessive force claims must be analyzed under the rubric of the constitutional right that is most directly implicated by the facts giving rise to the claim." *Nimely v. City of N.Y.*, 414 F.3d 381, 390 n.7 (2d Cir. 2005). Where, as here, a claim of excessive force arises in the context of alleged police pursuit or arrest, the claim is analyzed "under the Fourth Amendment and its 'reasonableness' standard." *Kerman v. City of N.Y.*, 261 F.3d 229, 238-39 (2d Cir. 2001) (citation omitted). Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is "objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (internal quotation marks and brackets omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 397

---

[5] In his amended complaint, plaintiff does not identify the defendants against whom each specific § 1983 claim is alleged. In his opposition to defendants' motions for summary judgment, however, plaintiff appears to assert his excessive force claim only with regard to defendants Mangone and Ciurcina. Accordingly, to the extent the amended complaint states excessive force claims against the remaining defendants, I deem them to have been abandoned. *See Blake v. Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007) (noting that where a "plaintiff's opposition papers d[o] not address defendants' motion for summary judgment on [a] claim, the claim is deemed abandoned" and collecting cases). In any event, the record is devoid of facts that would support an excessive force claim against any of the remaining defendants.

(1989)).  Determining whether excessive force has occurred requires a weighing of the "facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest."  *Id*. (citation omitted).

### i.  *Color of State Law*

In opposing plaintiff's excessive force claim, defendants Mangone and Cirucina first argue that they were not acting under color of state law on May 16, 2003, and therefore, that a § 1983 claim against them must fail as a matter of law.  In support of this argument, defendant Cirucina points out that while he was employed as a police detective on the relevant date, he was not on duty at the time and was present at the scene by virtue of his approved, off-duty employment with defendant Mangone.

"[W]hile it is clear that 'personal pursuits' of police officers do not give rise to section 1983 liability, there is no bright line test for distinguishing 'personal pursuits' from activities taken under color of law."  *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994).  That a police officer was off-duty at the time of an incident is not determinative; the court must examine the nature of the officer's actions as a whole.  *See id*. How the plaintiff subjectively reacted to the officer's conduct or whether the plaintiff perceived the officer as such is not the

subject of the inquiry. *See Davis v. Lynbrook Police Dep't.*, 224
F. Supp. 2d 463, 476 (E.D.N.Y. 2002) ("Although Davis does not
claim to have believed that Curtis was a police officer at this
point, Davis' subjective reaction to Curtis' conduct is not
relevant to determining whether Curtis was acting under color of
state law.") (citing *Pitchell*, 13 F.3d at 548).  Liability may
attach where an off-duty officer "invokes the real or apparent
power of the police department." *Pitchell*, 13 F.3d at 548
(citation omitted).  "Liability also may exist where off-duty
police officers perform duties prescribed generally for police
officers." *Id*. (citation omitted).

Viewing the facts in the light most favorable to plaintiff,
a reasonable fact-finder could find that defendant Ciurcina was
acting under color of state law on May 16, 2003.  Defendant
Ciurcina testified that upon arrival at the scene in response to
defendant Mangone's call, he restrained plaintiff by holding his
arms behind his back, most likely identified himself to the
officers who later arrived at the scene as a police detective,
and handcuffed plaintiff with handcuffs given to him by one of
the responding officers.  While defendants dispute between
themselves who handcuffed plaintiff and when, plaintiff also
testified, *inter alia*, that defendant Ciurcina restrained him and
handcuffed him.  Further, a factual dispute exists as to whether
defendant Ciurcina arrived on the scene while the physical

altercation between plaintiff and defendant Mangone was still
ongoing, retrieved a level from defendant Mangone's truck, joined
defendant Mangone in attempting to subdue plaintiff, and hit
plaintiff over the head with a level.[6]  In addition, Officer
Essex testified that the man he saw strike plaintiff with a level
(who may have been defendant Ciurcina) told him he was "on the
job," which Officer Essex took to mean that the man was a police
officer.  Drawing all reasonable inferences in plaintiff's favor,
a reasonable fact-finder could find that defendant Ciurcina
undertook these actions as a police officer.  Accordingly, a jury
must determine whether, in light of the nature of all of
defendant Ciurcina's actions, defendant Ciurcina acted under
color of state law on May 16, 2003.

---

[6] These disputed facts distinguish this case from *McNamara v. City of New York*, No. 06 Civ 5585, 2009 WL 735135 (S.D.N.Y. Mar. 20, 2009).  In *McNamara*, Judge Swain granted summary judgment in a defendant officer's favor on a plaintiff's excessive force claim where the defendant officer, who was off-duty and walking his dog at the time, engaged in a verbal dispute with the plaintiff which subsequently escalated into a physical altercation.  There was no dispute that at some point after the dispute became physical, the defendant officer pulled out his gun, pointed it at plaintiff, showed plaintiff his badge, and identified himself as a police officer.  *Id.* at *3.  Under these circumstances, Judge Swain held that "no rational fact finder could determine that [the defendant officer] was acting under color of state law prior to the time he displayed his badge and gun and identified himself as a police officer.  Thus, there is no predicate for liability under section 1983 or section 1988 for the physical altercation that occurred before [defendant] identified himself as a police officer." *Id.*

By contrast, in this case, plaintiff and defendant Ciurcina never themselves engaged in a private verbal dispute that escalated to physical violence.  Rather, plaintiff and defendant Mangone entered into a private verbal altercation that became physical, and defendant Ciurcina responded to the scene after receiving defendant Mangone's call.  Unlike in the *McNamara* case, in which the defendant officer's initial conduct was private in nature, a reasonable fact-finder could find that defendant Cirucina acted as a police officer from the time he responded to defendant Mangone's call, arrived at the scene of the incident, and observed the physical dispute between plaintiff and defendant Mangone.

Defendant Mangone also contends that he was not acting under color of state law during his interaction with plaintiff because, on May 16, 2003, he was a private citizen (albeit a retired police officer). "[P]rivate individuals are liable under Section 1983 where the private actor operates as a willful participant in joint activity with the State or its agents[.]" *Jouthe v. City of N.Y.*, No. 05-CV-1374, 2009 WL 701110, at *18 (E.D.N.Y. Mar. 10, 2009) (internal quotation marks omitted) (quoting *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003), *cert. denied*, 539 U.S. 942 (2003)). "To establish joint action, a plaintiff must show that the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law." *Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996).

Drawing all reasonable inferences in favor of plaintiff, a reasonable fact-finder could determine that defendant Mangone acted in concert with defendant Ciurcina after defendant Ciurcina's arrival on the scene. As noted above, the parties dispute whether defendant Cirucina joined defendant Mangone in his physical dispute with plaintiff. Crediting plaintiff's version of events, a reasonable fact-finder could determine that defendant Ciurcina and defendant Mangone shared the unlawful goal of using excessive force against plaintiff. Accordingly, whether

defendant Mangone acted under color of state law after involving defendant Ciurcina in the incident cannot be determined as a matter of law.

### ii. *Whether Force Was Excessive*

Defendants Mangone and Ciurcina further argue that regardless of whether they were acting jointly under color of state law on May 16, 2003, the force they used was not legally excessive. Material issues of fact exist as to the amount of force used after defendant Ciurcina's arrival. Defendant Cirucina alleges that he merely used force in order to restrain plaintiff's arms and handcuff him, and defendant Mangone alleges that the only force he used was, at some point, to hold plaintiff on the ground by placing his knee on plaintiff's back. According to plaintiff, however, defendant Ciurcina arrived on the scene while his physical dispute with defendant Mangone was ongoing, and either defendant Ciurcina or defendant Mangone subsequently approached him from behind and hit him over the right side of his head with a level. A reasonable fact-finder could find that either or both of defendants Mangone and Ciurcina used force against plaintiff that was objectively unreasonable following defendant Cirucina's arrival on the scene, and accordingly, neither defendant Mangone nor defendant Ciurcina is entitled to summary judgment.

### iii. *Qualified Immunity*

Defendant Ciurcina argues that even if he is not entitled to summary judgment on the merits of plaintiff's excessive force claim, summary judgment should nevertheless be granted in his favor on the basis of qualified immunity. "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, --- U.S. ----, 129 S.Ct. 808, 813 (U.S. Jan. 21, 2009).[7] The doctrine of qualified immunity provides "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (citation omitted).

Under the doctrine of qualified immunity, "officials who act in ways they reasonably believe to be lawful . . . should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). In the police officer context, the doctrine "serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Lennon v.*

---

[7] In *Pearson v. Callahan*, the Supreme Court overruled *Saucier's* requirement that a district court must first determine whether there was a deprivation of a constitutional right, and then whether such right was clearly established. *Pearson*, 129 S.Ct. at 818. Under *Pearson*, the court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *Id.* (noting that though the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).

*Miller*, 66 F.3d 416, 424 (2d Cir. 1995) (citation omitted).

In general, public officials are entitled to qualified immunity if either (1) their actions did not violate a constitutional right, or (2) if the alleged facts show a violation of a constitutional right, the court finds that the right was not clearly established at the time of the challenged actions. *See Moore v. Andreno,* 505 F.3d 203, 208 (2d Cir. 2007). Whether a right was clearly established depends on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier*, 533 U.S. at 202). "To determine whether a particular right was clearly established at the time of the alleged offense, courts should consider: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Frank v. Relin*, 1 F.3d 1317, 1328 (2d Cir. 1993). Immunity applies "if officers of reasonable competence could disagree" on whether the conduct at issue was unlawful. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As discussed above, drawing all reasonable inferences in plaintiff's favor, a reasonable fact-finder could determine that

defendant Ciurcina violated plaintiff's right to be free from
unreasonable force as secured by the Fourth Amendment.  I now
turn to whether this right was clearly established at the time of
defendant Ciurcina's alleged offense.  Numerous courts have noted
that the right to be free from objectively unreasonable force
during police pursuit and arrest is well settled.  *See, e.g.*,
*Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting that it
is "well established that the use of excessive force in the
course of an arrest is constitutionally prohibited").  In
particular,[8] "it is not objectively reasonable for an officer to
use deadly force to apprehend a suspect unless the officer has
probable cause to believe that the suspect poses a significant
threat of death or serious physical injury to the officer or
others."  *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756,
764 (2d Cir. 2003) (citation and internal quotation marks
omitted).  Under New York law, deadly force is "force which,
under the circumstances in which it is used, is readily capable

---

[8] In the Fourth Amendment context, unless the alleged use of force is
obviously objectively unreasonable, the Supreme Court requires a more
"particularized" inquiry into whether an individual's Fourth Amendment right
to be free from unreasonable force has been violated.  *See Brosseau v. Haugen*,
543 U.S. 194, 198-99 (U.S. 2004) ("[T]here is no doubt that *Graham v. Connor* .
. . clearly establishes the general proposition that use of force is contrary
to the Fourth Amendment if it is excessive under objective standards of
reasonableness.  Yet that is not enough.  Rather, we emphasized in *Anderson*
[*v. Creighton*] 'that the right the official is alleged to have violated must
have been "clearly established" in a more particularized, and hence more
relevant, sense: The contours of the right must be sufficiently clear that a
reasonable official would understand that what he is doing violates that
right.'  The relevant, dispositive inquiry in determining whether a right is
clearly established is whether it would be clear to a reasonable officer that
his conduct was unlawful in the situation he confronted.") (citing *Saucier*,
543 U.S. at 201-02).

of causing death or other serious physical injury." N.Y. Penal
Law § 10.00(11).

According to plaintiff and non-party witness Officer Essex,
either defendant Mangone or defendant Ciurcina hit plaintiff over
the head with a level during the physical dispute with such force
that it fractured plaintiff's jaw and caused plaintiff to lose
consciousness. The alleged blow to plaintiff's head qualifies as
deadly force, as it was readily capable of causing death or
serious physical injury. At the time plaintiff was struck,
Officer Essex states that he was pointing a gun at plaintiff, and
that the person who hit plaintiff with the level approached
plaintiff from behind. Crediting plaintiff's version of events,
a reasonable fact-finder could find that defendant Ciurcina
struck plaintiff over the head with the level, and that at that
time, defendant Ciurcina had no reason to fear that plaintiff
posed a risk of death or serious injury to him or to others.
This finding would compel a conclusion that under clearly
established law, defendant Ciurcina's use of deadly force was
objectively unreasonable. However, defendant Ciurcina denies
ever having wielded the level, alleging that he only used force
against plaintiff when he held plaintiff's arms behind his back
and handcuffed him. When "there are facts in dispute that are
material to a determination of reasonableness," dismissal on the
basis of a qualified immunity defense is inappropriate. *Thomas*

*v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999).  Accordingly, whether

defendant Ciurcina is entitled to qualified immunity on

plaintiff's excessive force claim cannot be determined as a

matter of law on summary judgment, and defendant Ciurcina's

motion is denied with respect to this claim.

### 2.  *False Arrest and Imprisonment*

Plaintiff also asserts a claim of false arrest against all

defendants.[9]  Federal claims for false arrest brought via § 1983

rest on an individual's Fourth Amendment right to be "free from

unreasonable seizures, including arrest without probable cause,"

and are "substantially the same as a claim for false arrest under

New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

To state a claim for false arrest under New York law, a plaintiff

must show that: (1) the defendant intentionally confined the

plaintiff; (2) the plaintiff was conscious of the confinement;

(3) the plaintiff did not consent to the confinement; and (4) the

confinement was not otherwise justified.  *See Savino v. City of

N.Y.*, 331 F.3d 63, 75 (2d Cir. 2003).  A plaintiff may establish

intentional confinement by showing that the defendant

"affirmatively procured or instigated the plaintiffs' arrest" by

---

[9] Here again, plaintiff does not identify the defendants against whom he
presses his false arrest claim in his amended complaint.  He opposes summary
judgment on his false arrest claim only with regard to defendants Yoo, Viani,
Alfano, and Ciurcina.  However, because plaintiff argues that defendant
Mangone acted in concert with defendant Ciurcina as a state actor, and because
defendant Mangone interprets the false arrest claim as pleaded with regard to
himself, I consider plaintiff's false arrest claim with regard to defendant
Mangone in addition to the other defendants.

another.  *King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997).

Regardless of whether the first three prongs are satisfied, a claim for false arrest and imprisonment will fail where a defendant establishes that probable cause existed, as the existence of probable cause constitutes justification and is a complete defense to an action for false arrest and imprisonment. *See Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994).  "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).  Probable cause is an objective determination based upon the information available to the officer at the time of the arrest; the officer's subjective beliefs and motivations are irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004).  A court may determine whether probable cause existed as a matter of law as long as there is "no dispute as to the pertinent events and the knowledge of the arresting officers." *Weyant*, 101 F.3d at 852.

There is no dispute that defendant Yoo intentionally confined plaintiff when he either handcuffed him or caused him to be handcuffed and placed him in the police car, and that plaintiff was conscious of the confinement and protested his

innocence.  Thus, plaintiff has met his burden under the first three prongs of the false arrest inquiry.[10]  Accordingly, I proceed to consider whether I may determine as a matter of law on summary judgment that justification in the form of probable cause existed with regard to plaintiff's arrest.

### i.  *Probable Cause*

According to defendant Yoo, who informed plaintiff that he was under arrest, and defendant Alfano, who supervised defendant Yoo and approved the arrest, probable cause to arrest plaintiff existed for the crime of assault.  In support of this argument, they point to their alleged conversations with both defendant Mangone and plaintiff prior to plaintiff's arrest, defendant Mangone's statements that plaintiff had hit him and threatened

---

[10] While the parties do not discuss this possibility, I note that an alternate theory of plaintiff's arrest exists.  Under this theory, plaintiff was arrested when defendant Ciurcina, acting under color of state law in concert with defendant Mangone, physically restrained plaintiff against his will by holding him on the ground.  Regardless, however, I conclude that even when all facts are construed and inferences drawn in plaintiff's favor, no reasonable fact-finder could find that defendant Ciurcina's belief that he had probable cause to arrest plaintiff for assault was not objectively reasonable. According to plaintiff, defendant Ciurcina arrived upon the scene while plaintiff and defendant Mangone were still engaged in a physical dispute. Both plaintiff and defendant Mangone were visibly injured.  In light of all of the information known to defendant Ciurcina, including his preexisting relationship with defendant Mangone, it was objectively reasonable for defendant Ciurcina to belief that plaintiff had assaulted defendant Mangone. This is particularly true given that there is no dispute that plaintiff either backed away or turned and fled from the parking lot, an action that a reasonable police officer could interpret as inculpatory.  No reasonable fact-finder could find that while the fight was ongoing, circumstances required or indeed permitted defendant Ciurcina to make further inquiries into whether plaintiff's actions were justified before forceably restraining plaintiff. Accordingly, probable cause to arrest plaintiff existed under this arrest scenario, and plaintiff cannot hold either defendant Ciurcina or defendant Mangone, who allegedly acted in concert with defendant Ciurcina, liable on this theory.

him with a knife, plaintiff's purported admission that he hit
defendant Mangone in the face with the mirror, and their personal
observations of defendant Mangone's facial injuries and the lack
of injury to plaintiff.  They further argue that in light of
these facts, they had no duty to make a further investigation
before arresting plaintiff, as they had objectively reasonable
grounds to believe plaintiff had committed assault and no reason
to believe defendant Mangone's account of events was unreliable.
*See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.
1997) ("Once a police officer has a reasonable basis for
believing there is probable cause, he is not required to explore
and eliminate every theoretically plausible claim of innocence
before making an arrest."); *Singer v. Fulton County Sheriff*, 63
F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a
crime by a person who claims to be the victim . . . has probable
cause to effect an arrest absent circumstances that raise doubts
as to the victim's veracity.").

Plaintiff's version of the information available to
defendants Yoo and Alfano at the time of his arrest is, however,
quite different.  According to plaintiff, defendant Mangone had
his foot on plaintiff's neck and defendant Ciurcina had his knee
on his back when defendants Yoo and Viani arrived on the scene.
Several parties and non-parties recall that plaintiff was dazed,
had sustained cuts and tears to his body and clothing, and was

visibly bleeding and spitting up blood and teeth at the time.
Plaintiff alleges that defendant Ciurcina handcuffed him with
either defendant Yoo's or defendant Viani's handcuffs before any
investigation was made.[11]  Further, plaintiff denies that
defendants Yoo or Alfano asked him for his version of events
until after he was arrested and in the patrol car, and that in
fact, because defendant Yoo came over to him "sarcastically" and
laughed at him, he never told any of the officers his version of
what had happened.  In addition, according to plaintiff, Ms.
Lopez, Officer Essex, and indeed the officers themselves, none of
the officers responding to the scene asked any of the bystanders
for a statement, despite Ms. Lopez's and Officer Essex's efforts
to tell the officers what they had seen.

Based on these differing versions of events, multiple
disputes of material fact exist as to the pertinent events and
the knowledge of defendants Yoo and Alfano at the time of
plaintiff's arrest.  Crediting plaintiff's version of events, a

---

[11] While defendants Yoo and Alfano do not make the argument, I note that
in this case, whether defendant Ciurcina had probable cause to arrest
plaintiff is irrelevant to whether defendants Yoo and Alfano had probable
cause for plaintiff's arrest.  While in some cases, under the "collective
knowledge doctrine," facts supporting probable cause may be imputed from one
officer to another, *see U.S. v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001), *some*
amount of communication between officers is necessary in order for a second
officer's reliance on the first officer's knowledge to be reasonable.  *See*
*Loria v. Gorman*, 306 F.3d 1271, 1292 (2d Cir. 2002) ("An officer may arrest an
individual based on a report by another officer only if reliance on that
report is objectively reasonable.").  Here, there is no dispute that the on-
duty officers did not question defendant Ciurcina regarding what had
transpired, and that defendant Ciurcina did not call upon the on-duty officers
to assist him in arresting plaintiff.  Indeed, material issues of fact exist
as to whether there was any communication at all between defendant Ciurcina
and defendants Yoo and Alfano.

reasonable fact-finder could determine that defendant Mangone's and defendant Ciurcina's postures upon the officers' arrival, plaintiff's visible injuries, the lack of any threat of immediate harm, and the presence of eyewitnesses eager to provide statements in plaintiff's favor were circumstances that called into doubt defendant Mangone's version of events and required further investigation into whether probable cause to arrest plaintiff for assault was negated by the justification of self-defense. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (noting that under New York law, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause"); *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) (citing with approval the holding in *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) that "[r]easonable avenues of investigation must be pursued [to establish probable cause]"); *see also Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (holding that "under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause," and noting that self-defense is an exculpatory defense). Accordingly, the motions of defendants Yoo and Alfano for summary judgment on plaintiff's false arrest claim are denied.

ii. *Personal Involvement*

Defendants Viani, Ciurcina, and Mangone each argue that they cannot be held liable for false arrest because they were not personally involved in plaintiff's arrest. As previously noted, personal involvement is a prerequisite to a finding of liability under § 1983. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement may be established by a showing of direct participation, meaning "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001). Personal involvement is also established where police officers fail "to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); *see also Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003). In order for liability to attach on a failure to intervene theory, a police officer must have known that a constitutional violation was being committed by a law enforcement official, and "there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Anderson*, 17 F.3d at 557.

I turn first to defendant Viani's arguments. According to defendant Viani, he did not directly participate in plaintiff's arrest because his role at the scene of the crime was limited to

managing crowd control, and did not include investigating the incident or making arrests.  Both defendants Yoo and Viani acknowledge, however, that they acted as partners during the incident, that defendant Yoo conferred with defendant Viani more than once prior to arresting plaintiff, and that defendant Yoo shared at least some of the details of what he had learned during his investigation with defendant Viani.  Based upon these facts, a reasonable fact-finder could find that defendant Viani was involved in the decision to arrest plaintiff, and therefore, that he directly participated in plaintiff's arrest.  Further, a reasonable fact-finder could also find that defendant Viani knew that defendant Yoo was making an arrest without probable cause, that he had a reasonable opportunity to intervene, and that he failed to do so.  Accordingly, material issues of fact exist concerning defendant Viani's personal involvement in plaintiff's arrest.

Nor do the personal involvement arguments of defendants Ciurcina and Mangone entitle them to summary judgment.  As previously discussed, material issues of fact exist as to whether defendant Ciurcina was acting as a police officer when he arrived at the scene, and whether he and defendant Mangone acted jointly to subdue and restrain plaintiff against his will.  Drawing all reasonable inferences in favor of plaintiff, defendants Ciurcina and Mangone intentionally participated in plaintiff's arrest by

physically holding plaintiff on the ground against his will until the arrival of defendant officers Yoo and Viani.  Further, defendant Ciurcina alleges that he, and not defendant Yoo, handcuffed plaintiff.  Nor can it be determined on summary judgment that defendants Ciurcina and Mangone lacked knowledge of the facts rendering plaintiff's arrest illegal.  Crediting plaintiff's version of the facts, a reasonable fact-finder could find that defendant Mangone knew plaintiff's use of force was justified.  Further, once plaintiff was subdued, as previously discussed, a reasonable fact-finder could find that circumstances required the defendant officers, including defendant Ciurcina, to make further inquiries before arresting plaintiff.  Accordingly, whether defendants Ciurcina and Mangone were personally involved in plaintiff's arrest must be determined by a jury.

### iii. *Qualified Immunity*

All of the defendants except defendant Mangone argue that they are entitled to qualified immunity on plaintiff's false arrest claim.  Bearing in mind the principles and standards governing qualified immunity set forth above, I note that I have already determined that the facts alleged by plaintiff are sufficient to show a violation of his well established constitutional right to be free from arrest without probable cause.  *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Without a doubt, the right not to be arrested without

probable cause is clearly established."). Therefore, I turn to defendants' claims that it was objectively reasonable for them to believe they had probable cause.

In the Second Circuit, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest – that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" *Jenkins v. City of N.Y.*, 478 F.3d 76, 87 (2d Cir. 2007) (quoting *Lennon v. Miller*, 66 F.3d 416, 423-24 (2d Cir. 1995)). "Arguable" probable cause is not "almost" probable cause. "The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 644 (1987)).

Defendants Yoo, Viani, and Alfano argue that even if all facts and inferences are construed in plaintiff's favor, a competent officer with the knowledge they had at the time of plaintiff's arrest could reasonably determine that probable cause existed. I disagree. According to plaintiff, and as recalled by defendants Ciurcina and Mangone and non-party witnesses Ms. Brooke and Officer Essex, plaintiff was visibly injured and bloody upon the on-duty officers' arrival. Further, plaintiff and Ms. Brooke recall that defendant Mangone was standing with

his foot on plaintiff's neck, and that defendant Ciurcina was kneeling with his knee on plaintiff's back, when the on-duty officers appeared. Both Ms. Brooke and Officer Essex allege that they attempted to speak to one or more of defendants Yoo, Viani, and Alfano, but none of these officers permitted Ms. Brooke or Officer Essex to relate to them what they had seen. Under these circumstances, any officer of reasonable competence would agree that some further investigation should have been made into whether plaintiff's actions were justified before arresting him for assaulting defendant Mangone. *See, e.g.*, *Loria v. Gorman*, 306 F.3d 1271, 1293 (2d Cir. 2002) (affirming district court's denial of qualified immunity and noting that defendant officer lacked probable cause, "arguable or otherwise," where officer failed adequately to question the victim of the alleged crime); *Bradley v. Jusino*, No. 04 Civ. 8411, 2009 WL 1181617, at *7-8 (S.D.N.Y. May 4, 2009) ("The Court agrees with Plaintiff that under the circumstances of this case, Defendant's failure to engage in any inquiry precludes a finding that arguable probable cause existed.") (collecting cases). Accordingly, whether defendants Yoo, Viani, and Alfano are entitled to qualified immunity cannot be determined on summary judgment, and their motions are denied with respect to plaintiff's false arrest claim.

Defendant Ciurcina also argues that he is entitled to qualified immunity, on the ground that when he restrained plaintiff, it was objectively reasonable for him to believe he possessed probable cause to do so.  A material dispute of fact exists, however, as to whether defendant Ciurcina was acting as a police officer during the incident.  If defendant Ciurcina was not acting as a police officer, he is not entitled to qualified immunity.[12]  Accordingly, whether defendant Ciurcina is entitled to qualified immunity on plaintiff's false arrest claim cannot be determined on summary judgment, and defendant Ciurcina's motion is denied with respect to this claim.

### 3.  *Denial of Medical Treatment - Deliberate Indifference*

Next, plaintiff argues that defendants Yoo, Viani, and Alfano violated his constitutional rights through their

---

[12] Even assuming *arguendo* that the circumstances of this case correspond to one of the rare exceptions to the general rule that private individuals are not entitled to qualified immunity, which is generally available only to public officials, *see Bender v. Gen. Servs. Admin.*, 539 F. Supp. 2d 702, 712-14 (S.D.N.Y. 2008) (discussing general rule and exceptions and collecting cases), even if defendant Ciurcina were in a position to claim entitlement to qualified immunity as a private individual, that question cannot be resolved on summary judgment for the same reasons the qualified immunity claims of defendants Yoo, Viani, and Alfano are unavailing at this stage of these proceedings.

Further, defendant Ciurcina cannot argue that if he was not acting as a police officer on the day in question, it follows that he cannot be held liable under § 1983 for false arrest because he was not acting under color of state law.  This argument fails because a reasonable fact-finder could determine that defendant Ciurcina was acting under color of state law when he jointly participated with other defendant officers in plaintiff's arrest by physically holding plaintiff to the ground and handcuffing him.

deliberate indifference to his need for medical treatment.[13]  For

pretrial detainees, "deliberate indifference" claims under § 1983

are grounded in the due process clause of the Fourteenth

Amendment.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).

"[W]hile the Supreme Court has not precisely limned the duties of

a custodial official under the Due Process Clause to provide

needed medical treatment to a pretrial detainee, it is plain that

an unconvicted detainee's rights are at least as great as those

of a convicted prisoner . . . under the Eighth Amendment to be

free from cruel and unusual punishments[.]"  *Id.* (structure

altered).  The Second Circuit Court of Appeals "has applied the

Eighth Amendment test for adequate medical care to a pre-trial

detainee's right to the same."  *Myrie v. Calvo/Calvoba*, 591 F.

Supp. 2d 620, 625 (S.D.N.Y. 2008) (citing *Cuoco v. Moritsugu*, 222

F.3d 99, 106 (2d Cir. 2000)).

In this context, deliberate indifference may be shown "by

evidence that the official acted with reckless disregard for the

substantial risk posed by the detainee's serious medical

condition."  *Weyant*, 101 F.3d at 856.  While a plaintiff must

show "something more than mere negligence . . . proof of intent

is not required."  *Id.* (internal quotations and citations

---

[13] As with his other claims, plaintiff does not identify the defendants
with regard to whom he presses this claim.  Because the parties have
interpreted this claim to be pleaded only with regard to the on-duty officers,
I consider it only as it relates to defendants Yoo, Viani, and Alfano, and I
deem it to have been abandoned as to the remaining defendants. *See Blake v.
Race*, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007).

omitted). "[T]he deliberate indifference standard embodies both
an objective and a subjective prong": (1) objectively, the
alleged deprivation must be "sufficiently serious," such that a
"condition of urgency [exists], one that may produce death,
degeneration, or extreme pain"; and (2) subjectively, "the
charged official must act with a sufficiently culpable state of
mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Material issues of fact preclude resolving plaintiff's
deliberate indifference claims on summary judgment. The record
permits the inferences that, following his arrest, plaintiff
appeared dazed, was visibly scratched and bleeding, and was
spitting up blood and pieces of teeth; that defendant Alfano was
informed by EMT medical personnel that plaintiff should be
treated at the hospital; that all the on-duty officers resisted
the attempts of witnesses to tell them what had happened,
including how plaintiff had been struck on the head with a level
and lost consciousness; that no one asked plaintiff if he wanted
treatment; that defendants Yoo and Viani, with defendant
Mangone's approval, drove plaintiff to the precinct rather than
the hospital; and that plaintiff was not taken to the hospital
until about 20 minutes after he requested medical treatment at
the precinct. While plaintiff acknowledges that he did not
request medical treatment until he reached the precinct, this
fact is not dispositive. There is no dispute that at the

hospital, plaintiff was diagnosed with a fractured jaw and facial abrasions, and that the injuries to plaintiff's jaw required at least two surgeries. Under these circumstances, a reasonable fact-finder could find that some or all of defendants Yoo, Viani, and Alfano received information, and could see for themselves, that plaintiff was in serious need of immediate medical care and yet denied him such care because they were deliberately indifferent to that need. Further, whether defendants Yoo, Viani, and Alfano are entitled to qualified immunity cannot be determined on summary judgment, as a pretrial detainee's right not to be intentionally or recklessly denied treatment for a serious medical condition was clearly established at the time. *See, e.g.*, *Liscio v. Warren*, 901 F.2d 274, 276-77 (2d Cir. 1990). Accordingly, summary judgment on plaintiff's deliberate indifference claims is inappropriate.

### 4. *Malicious Prosecution*

Plaintiff also asserts a malicious prosecution claim against defendants Yoo and Mangone.[14] To prevail on a § 1983 malicious prosecution claim, a plaintiff must establish the elements of malicious prosecution under state law, and then show that his

---

[14] While plaintiff does not specify in his amended complaint the defendants against whom the malicious prosecution claim is pleaded, in his opposition papers, plaintiff only addresses this claim with regard to defendants Yoo and Mangone. Accordingly, I deem any malicious prosecution claims the amended complaint may assert against other defendants to have been abandoned. *See Blake*, 487 F. Supp. 2d at 217. In any event, the record is devoid of facts sufficient to show that any of the other defendants were personally involved in the prosecution of plaintiff.

Fourth Amendment rights were violated after legal proceedings were initiated. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted). To state a claim for malicious prosecution under New York law, a plaintiff must prove: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (citation omitted). For the constitutional element, plaintiff must show a seizure or other "perversion of proper legal procedures" implicating the plaintiff's personal liberty and privacy interests under the Fourth Amendment. *Wash. v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004).

### i. *Initiation or Continuation of a Criminal Proceeding*

As to the first element of a malicious prosecution claim, "there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding[.]" *Brome v. City of N.Y.*, No. 02-CV-7184, 2004 WL 502645, at *5-6 (S.D.N.Y. Mar. 15, 2004); *see also Townes v. City of N.Y.*, 176 F.3d 138, 147 (2d Cir. 1999). A plaintiff may overcome the presumption of independent prosecutorial judgment, however, by "demonstrating that 'the defendant played an active role in the prosecution, such as giving advice and encouragement

or importuning the authorities to act.'" *Espada v. Schneider*,
522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (quoting *DeFilippo v.
County of Nassau*, 583 N.Y.S.2d 283, 284 (2d Dep't. 1992)). "For
laypersons who are defendants in cases of malicious prosecution,
courts have held that simply reporting a crime to the police and
serving as a witness does not meet the first element of
initiating a criminal proceeding." *Llerando-Phipps v. City of
N.Y.*, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005) (citing *Rohman v.
N.Y. City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000)).
However, "[w]here a party is responsible for providing false
information or manufactured evidence that influences a decision
whether to prosecute, he may be held liable for malicious
prosecution." *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337,
343 (S.D.N.Y. 1999). Thus, with regard to police officers,
courts have found triable issues of fact as to the initiation
element where a defendant police officer "brought formal charges
and had the person arraigned, filled out complaining and
corroborating affidavits, swore to and signed a felony complaint,
or created false information and forwarded it to prosecutors."
*Espada*, 522 F. Supp. 2d at 553; *see also Ricciutti v. N.Y. City
Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997); *Llerando-Phipps*,
390 F. Supp. 2d at 382-83 (S.D.N.Y. 2005) (collecting cases).

Here, not only did defendant Yoo sign the criminal complaint
filed against plaintiff, but material questions of fact also

exist as to the accuracy and good faith of defendant Yoo's account of events leading up to plaintiff's arrest. Crediting plaintiff's testimony, a reasonable fact-finder could find that defendant Yoo deliberately misrepresented events to the ADA in a way that influenced his decision to prosecute, and therefore, plaintiff has raised a triable issue of fact to rebut the presumption of an independent prosecutorial decision. As to defendant Mangone, a reasonable fact-finder could determine that defendant Mangone's involvement extended beyond merely "reporting a crime to the police and serving as a witness." *Llerando-Phipps*, 390 F. Supp. 2d at 382. Rather, according to plaintiff and other witnesses, defendant Mangone deliberately made false statements to the police regarding the events of May 16, 2003. Further, defendant Mangone did travel to court at least once in relation to plaintiff's case, and a fact-finder could infer from defendant Ciurcina's testimony that defendant Mangone would have testified against plaintiff had earlier summonses reached him at his correct address. Under these circumstances, a reasonable fact-finder could determine that defendant Mangone initiated or continued the criminal proceedings against plaintiff.

### ii. *Favorable Termination*

With regard to the second element of malicious prosecution, the parties dispute whether the criminal charges against

plaintiff were terminated in plaintiff's favor. "Where a
prosecution did not result in an acquittal, it is generally not
deemed to have ended in favor of the accused, for purposes of a
malicious prosecution claim, unless its final disposition is such
as to indicate the accused's innocence." *Fulton v. Robinson*, 289
F.3d 188, 196 (2d Cir. 2002). Under certain circumstances,
however, dismissal is considered to be a termination in
plaintiff's favor. For example, "the state's effective
abandonment of a prosecution, [resulting] in a dismissal for
violation of the accused's speedy trial rights, without an
adjudication of his guilt or innocence, constitute[s] a favorable
termination." *Id.* (citing *Murphy v. Lynn*, 118 F.3d 938, 949-50
(2d Cir. 1997)). *See also Smith-Hunter v. Harvey*, 95 N.Y.2d 191,
195-98 (N.Y. 2000) (a "CPL 30.30 dismissal" based on New York's
speedy trial statute that is "sought and granted as a matter of
statutory right based on the prosecutor's inaction" is a
favorable termination in the absence of circumstances
inconsistent with innocence).

Here, an issue of material fact exists as to whether the
charges against plaintiff were dismissed on speedy trial grounds
for failure to prosecute. Defendant Mangone testified that
plaintiff "copped a plea." However, both the IAB report and
defendant Ciurcina's testimony support a finding that the charges
against plaintiff were dropped due to defendant Mangone's failure

to cooperate with the government, resulting in prosecutorial inaction and dismissal on speedy trial grounds.[15]  As discussed above, dismissal for this reason qualifies as a termination in plaintiff's favor.  Accordingly, plaintiff has met his burden under the second element of the malicious prosecution inquiry.

### iii. *Lack of Probable Cause*

The third element of a malicious prosecution claim inquires whether there was a lack of probable cause for commencing the proceeding.  The probable cause at issue in a malicious prosecution claim is "probable cause to believe that [plaintiff] could be successfully prosecuted."  *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999).  If a plaintiff can show that there is a material issue of fact as to the existence of probable cause to make an arrest, then a material issue of fact exists as to whether there was probable cause to prosecute.  *Id*. Conversely, if probable cause exists at the time of arrest, it is presumed to continue to the time of prosecution unless undermined

---

[15] In an affidavit signed by plaintiff and submitted with his opposition papers, plaintiff submits a "Certificate of Disposition" from New York City Criminal Court, County of Richmond, dated June 29, 2004, stating simply that the charges against plaintiff were "dismissed."  *See* Affidavit of Aaron Wong dated May 18, 2009, Ex. D (copy of Certificate).  No reason for the dismissal is provided in the Certificate.  While plaintiff's counsel stated at oral argument that the ADA moved for dismissal of the charges based on Mr. Mangone's failure to cooperate as the complaining witness, the Certificate does not substantiate this argument.  I note for the record that defendants Yoo and Viani object to my consideration of plaintiff's affidavit and attached exhibits on the grounds that they were not provided to defendants Yoo and Viani during the course of discovery.  However, I need not rule upon this objection because I do not rely on the Certificate, which adds nothing to plaintiff's case.

by new exculpatory facts. *See Kinzer v. Jackson*, 316 F.3d 139, 143-44 (2d Cir. 2003). As discussed above, material issues of fact exist as to whether the on-duty defendant officers had probable cause to arrest plaintiff. Accordingly, whether probable cause to prosecute plaintiff existed cannot be determined on summary judgment.

### iv. *Actual Malice*

Turning to the fourth element, plaintiff must also show that in initiating or continuing the criminal proceeding against him, defendants Yoo and Mangone acted with actual malice. "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (1978)). "In most cases, the lack of probable cause--while not dispositive--'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Id.* (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (4th Dep't. 1980)).

Construing the facts in the light most favorable to plaintiff, a reasonable trier of fact could determine that both defendants Yoo and Mangone were motivated by "something other

than a desire to see the ends of justice served" when they participated in his prosecution.  Plaintiff testified that after placing him in the police car, defendant Yoo came over to him "sarcastically" and laughed at him, giving him the impression that defendant Yoo "didn't really care what was right or wrong at that point[.]"  Pl. Dep. II. at 114.  These facts, together with the facts supporting a lack of probable cause to prosecute plaintiff, are sufficient to permit an inference of malice.  With regard to defendant Mangone, a reasonable fact-finder could find that defendant Mangone knew plaintiff was justified in defending himself, but that defendant Mangone nevertheless wished to punish plaintiff for hitting him with the mirror as well as to escape liability himself, and that these factors motivated him to lie to the police about his altercation with plaintiff.  Accordingly, plaintiff has raised material issues of fact as to whether defendants Yoo and Mangone acted with actual malice.

### v. *Fourth Amendment Violation*

Finally, to make out a malicious prosecution claim under § 1983, plaintiff must also show a seizure or other "perversion of proper legal procedures" implicating the his rights under the Fourth Amendment resulting from the initiation or pendency of the criminal proceeding against him.  *Wash. v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004); *Murphy*, 118 F.3d 938 at 944. With regard to this constitutional element, the Second Circuit

has noted that "the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (citing *Murphy*, 118 F.3d 938 at 946); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995) (noting that in a criminal proceeding, "any post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement"). Here, plaintiff was compelled to appear in court between eight and ten times over a year and a half in connection with the charges against him before those charges were dismissed. Accordingly, plaintiff has shown a Fourth Amendment "seizure" sufficient to support a § 1983 malicious prosecution claim.

### vi. *Qualified Immunity*

Defendant Yoo further argues that even if plaintiff has raised material issues of fact as to whether he was maliciously prosecuted, defendant Yoo is nevertheless entitled to qualified immunity on this claim. "The standard for qualified immunity from a malicious prosecution claim is the same as that for false arrest:  an arresting officer 'is entitled to qualified immunity if (a) it was objectively reasonable for the officer to believe that probable cause existed or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Ullah v. Office of Dist. Attorney*, No. 07 Civ. 2687, 2009

WL 2151357, at *4 (S.D.N.Y. July 20, 2009) (citing *O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993)); *see also Gil v. County of Suffolk,* 590 F. Supp. 2d 360, 370-71 (E.D.N.Y. 2008).  As discussed above, whether defendant Yoo is entitled to qualified immunity on plaintiff's false arrest claim cannot be determined on summary judgment, and for the same reasons, neither can such a determination be made with regard to plaintiff's malicious prosecution claim.  Accordingly, defendant Yoo's motion for summary judgment is denied with regard to this claim.

**B.**    ***Intentional Discrimination - § 1981***

Plaintiff brings claims of intentional discrimination against defendants Mangone and Ciurcina[16] pursuant to 42 U.S.C. § 1981.[17]  Section 1981 provides a remedy "against private actors who intentionally discriminate on the basis of race or ethnicity."  *Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310,

---

[16] Here again, plaintiff does not identify in the amended complaint the defendants against whom the § 1981 claim is brought.  In his opposition papers, he argues the merits of his claim only with regard to defendants Mangone and Ciurcina.  Accordingly, to the extent the amended complaint asserts § 1981 claims against the remaining defendants, I deem those claims abandoned.  *See Blake*, 487 F. Supp. 2d at 217.

[17] Section 1981 provides, in relevant part, as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. . . . The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(a), (c).

322 (E.D.N.Y. 2001) (citing, *inter alia*, 42 U.S.C. § 1981; *Runyon v. McCrary*, 427 U.S. 160, 168-75 (1976); *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988)).  To the extent plaintiff brings a § 1981 claim against defendant Ciurcina as a public official, he must do so via § 1983.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989).  Because a material issue of fact exists with regard to whether defendant Ciurcina was acting as a public official on May 16, 2003, I consider plaintiff's claim against him as both a private individual and a public official.

Whether brought via § 1983 or otherwise, "[t]o establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute[.]"  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993), *cert. denied*, 516 U.S. 824 (1995).  The enumerated activities include the rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).  There is no dispute that plaintiff, as a black male, is a member of a racial minority.  Accordingly, I consider whether plaintiff has met his burden under the two remaining elements of his § 1981 claim in turn.

1.  *Intent to Discriminate*

To prevail on a § 1981 claim, it is crucial that a plaintiff come forth with evidence of intent to discriminate, as this element distinguishes a federal § 1981 claim from a state-law tort claim. *See Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (evidence of discriminatory intent essential to a section 1981 claim). Discriminatory intent on the basis of race must be a substantial or motivating factor behind the behavior complained of in order for a defendant to be held liable under § 1981. See *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001). Identifying evidence of discriminatory intent requires an expansive approach to the record, since "plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence," and a defendant "is unlikely to leave a 'smoking gun[.]'" *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998).

In support of his claim that defendants Mangone and Ciurcina intentionally discriminated against him, plaintiff has offered his own and Ms. Lopez's testimony that upon first encountering plaintiff, without provocation, defendant Mangone directed racial epithets toward plaintiff by calling him a "nigger," accused him of throwing used drug vials and condoms in the parking lot, and of "not belonging" in the parking lot. Defendant Mangone denies that he used any racially charged language. There is no dispute

that defendant Ciurcina was not present at the time defendant
Mangone allegedly used racial slurs against plaintiff, and
plaintiff does not allege that defendant Ciurcina was at some
point during the incident apprised of defendant Mangone's alleged
statements, nor that defendant Ciurcina himself used racial
slurs.

Assuming, as further discussed below, that the
discriminatory acts alleged by plaintiff concern one or more of
the activities enumerated in the statute, whether defendant
Mangone used racial epithets is an issue of fact that is material
to determining whether defendant Mangone possessed the requisite
discriminatory intent.  Accordingly, defendant Mangone is not
entitled to summary judgment on this ground.  With regard to
defendant Ciurcina, however, even when the facts are construed in
the light most favorable to plaintiff, plaintiff has failed to
adduce evidence sufficient to permit a reasonable fact-finder to
find that defendant Ciurcina was motivated by racial animus.
While plaintiff alleges that defendant Ciurcina aimed and drove
his vehicle directly toward plaintiff, joined defendant Mangone
in attempting to subdue plaintiff, and may have hit plaintiff
over the head with a level, standing alone, these alleged acts of
violence are insufficient to support a finding of race-based
discriminatory intent.  "Hostile conduct may support an inference
of discrimination, but is not alone sufficient." *Bishop v. Toys*

*"R" US-NY, LLC*, No. 04 Civ. 9403, 2009 WL 440434, at *6 (S.D.N.Y. Feb. 19, 2009) (citing, *inter alia*, *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101-05 (2d Cir. 2001) ("Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it.")); *see also Obilo v. City Univ. Of City of N.Y.*, No. CV-01-5118, 2003 WL 1809471, at *11 (E.D.N.Y. Apr. 7, 2003) (allegations that police officers believed white complainant over black suspect on account of race were insufficient to establish racial animus).  Accordingly, because plaintiff's claim that defendant Ciurcina was motivated by racial animus is speculative, summary judgment is granted in defendant Ciurcina's favor on plaintiff's § 1981 claim.

### 2.  *Enumerated § 1981 Activity*

Based on his account of defendant Mangone's attack on him, plaintiff argues that he has adduced evidence sufficient to support a claim under the "equal benefit" clause of § 1981: namely, that he was deprived of the right "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a).  In this Circuit, the equal benefit protections of § 1981(a) do not require state action and may be asserted against private individuals such as defendant Mangone.  *Phillip v. Univ. of Rochester*, 316 F.3d 291, 294-95 (2d Cir. 2003).  Nevertheless,

in *Phillip*, the Second Circuit "assume[ed] that Section 1981 requires a nexus to state proceedings or laws." *Id.* at 298. The *Phillip* court declined, however, to provide guidance on the type of link between a private actor and a state law or proceeding that is sufficient to satisfy the nexus requirement. *Id.* at 298 ("We do not here attempt to define the universe of laws and proceedings for the security of persons and property, believing this task best resolved case by case.").

In *Pierre v. J.C. Penney Co.*, 340 F. Supp. 2d 308, 313 (E.D.N.Y. 2004), Judge Dearie concluded that under *Phillip*, a section 1981 violation might occur when a defendant injures "the security of persons and property" in violation of a state law, and does so with a racially discriminatory purpose. Courts in this Circuit have subsequently agreed with the *Pierre* analysis. *See, e.g.*, *Bishop*, 2009 WL 440434, at *6; *Jones v. J.C. Penney's Dep't. Stores, Inc.*, No. 03-CV-920A, 2007 WL 1577758, at *18 (W.D.N.Y. May 31, 2007), *aff'd*, 317 Fed.Appx. 71 (2d Cir. 2009). Here, plaintiff has adduced evidence sufficient to permit a reasonable fact-finder to find that defendant Mangone violated New York State laws prohibiting assault and battery,[18] which, as

---

[18] To state claims for assault and battery under New York law, a plaintiff must allege "an intentional placing of another person in fear of imminent harmful or offensive contact" and "an intentional wrongful physical contact with another person without consent," respectively. *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (citation and internal quotation marks omitted). Here, plaintiff's account of defendant Mangone's threatening statements and subsequent physical attack satisfies these standards.

noted in *Pierre*, are "clearly intended for the 'security of persons.'" *Pierre*, 340 F. Supp. 2d, at 312-13.

For the reasons above, I conclude that plaintiff has adequately alleged the elements of a § 1981 equal benefits claim against defendant Mangone. Further, because plaintiff has raised material issues of fact as to whether defendant Mangone acted with discriminatory intent and as to whether, when, and to what extent he physically attacked plaintiff, defendant Mangone's motion for summary judgment on plaintiff's § 1981 claim against him is denied.

## C. *Civil Rights Conspiracy Under § 1985(3)*

Finally, plaintiff brings a claim of civil rights conspiracy against defendants Mangone and Cirucina pursuant to 42 U.S.C. § 1985(3).[19] "To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). In addition, a

---

[19] Because plaintiff only defends his § 1985(3) claim with regard to defendants Mangone and Ciurcina, I deem any § 1985(3) claims the amended complaint may assert with regard to other defendants to have been abandoned. *See Blake*, 487 F. Supp. 2d at 217.

plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004), *cert. denied*, 126 S.Ct. 424 (2005) (quoting *Thomas*, 165 F.3d at 146 (citations omitted)).

As set forth above, plaintiff has not adduced sufficient evidence to support a finding that defendant Ciurcina acted with discriminatory animus, and accordingly, summary judgment is granted in defendant Ciurcina's favor on plaintiff's § 1985(3) claim. Further, in the § 1985(3) context, "intentional discrimination must motivate the group [of conspirators]." *Straker v. Metro. Transit Auth.*, No. 03-CV-1756, 2005 WL 3287445, at *3 (E.D.N.Y. Dec. 5, 2005). Where "only one conspirator was so motivated, the conspiracy does not fall within the scope of § 1985(3)." *Id.* Therefore, because plaintiff has only adduced evidence sufficient to support a finding that defendant Mangone acted with discriminatory animus, plaintiff cannot succeed on his § 1985(3) conspiracy claim. Accordingly, defendant Mangone's motion for summary judgment is also granted with regard to this claim.

### III. <u>Third-Party Claims of Defendants Yoo and Viani</u>

As a third-party defendant, the City also moves for summary judgment on the claims brought against it by defendants and third-party plaintiffs Yoo and Viani. Defendants Yoo and Viani

challenge Corporation Counsel's determination to deny their
requests for legal representation and seek indemnification for
any judgment that may be entered against them.  The City argues,
*inter alia*, that this Court lacks subject matter jurisdiction
over the representation claims, and that the indemnification
claims are premature.

**A.    *Representation Claims***

In their third-party complaint, defendants Yoo and Viani
claim that that Corporation Counsel's decision not to represent
them in the underlying action was arbitrary and capricious (Fifth
Cause of Action), and therefore, that they are entitled to
recover attorney's fees and costs from the City (Second Cause of
Action).  Both of these claims derive from the City's obligations
pursuant to Section 50-k(2) of New York City's General Municipal
Law, which provides, in relevant part:

> At the request of the employee . . . the city shall provide
> for the defense of an employee of any agency in any civil
> action or proceeding in any state or federal court . . .
> arising out of any alleged act or omission which the
> corporation counsel finds occurred while the employee was
> acting within the scope of his public employment and in the
> discharge of his duties and was not in violation of any rule
> or regulation of his agency at the time the alleged act or
> omission occurred.

N.Y. Gen. Mun. Law § 50-k(2).

**1.    *Subject Matter Jurisdiction***

In its motion for summary judgment, the City first contends
that I lack subject matter jurisdiction over the representation

claims of defendants Yoo and Viani because such claims must be brought via a proceeding pursuant to Article 78 of New York's Civil Practice Law and Rules. An Article 78 proceeding is an appropriate remedy in an action against a New York State body or officer where, *inter alia*, the issue raised is "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion[.]" N.Y. C.P.L.R. § 7803(3). There is no dispute that Article 78 proceedings must be brought in the New York State supreme court located in the appropriate county. *See* N.Y. C.P.L.R. § 7804(b) ("A proceeding under [Article 78] shall be brought in the supreme court in the county specified [by statute]"); *Brown v. Tomcat Elec. Sec., Inc*., No. 03-CV-5175, 2007 WL 2461823, at *3 (E.D.N.Y. Aug. 27, 2007) ("New York law vests jurisdiction over Article 78 proceedings solely in the state courts").

The issue here is whether an Article 78 proceeding is the *only* vehicle by which defendants Yoo and Viani may bring their representation claims against the City. Section 50-k makes no mention of Article 78, much less does it provide that actions seeking to enforce rights arising under § 50-k(2) must be brought via an Article 78 proceeding. Nor does the Third-Party Complaint make reference to Article 78. Further, federal courts in this district and others have found no authority compelling a

determination that Article 78 is the exclusive vehicle for
resolution of claims arising under § 50-k(2). *See, e.g.*,
*Mercurio v. City of N.Y.*, 758 F.2d 862, 865 (2d Cir. 1985)
(noting that in his discretion, a judge of the Eastern District
retained jurisdiction over the individual defendants'
cross-claims for representation and indemnification arising under
§ 50-k); *Kelly v. City of N.Y.*, 692 F. Supp. 303, 306 (S.D.N.Y.
1988) (noting that no court has found Article 78 to be the
exclusive means to raise a § 50-k(2) claim); *Banks v. Yokemick*,
144 F. Supp. 2d 272, 277 (S.D.N.Y. 2001) ("[T]he weight of
opinion among courts in [the Southern] District which have
considered the issue is that nothing in G.M.L. § 50-k or case law
compels a ruling that Article 78 provides the exclusive method
for City employees to establish a claim for representation or
indemnification or to contest the Corporation Counsel's rejection
of a demand for such relief." ) (collecting cases).

For the reasons set forth above, I conclude that nothing in
the relevant statutes or case law precludes my exercise of
discretion to retain supplemental jurisdiction over defendants
Yoo's and Viani's 50-k(2) representation claims.  In this case,
supplemental jurisdiction is appropriate, as third-party
plaintiffs' denial of representation claims derive from and are
closely related to the events giving rise to the underlying
action.  *See* 28 U.S.C. § 1367(a).  Accordingly, I exercise my

discretion to retain supplemental jurisdiction over the representation claims.

## 2. *Procedural Bars*

The City argues that even if I retain supplemental jurisdiction over the representation claims, those claims are nevertheless procedurally barred for two reasons. The first relates to the statute of limitations governing certain types of claims that might have been brought via Article 78. To be timely, a claim pursued via Article 78 must be brought within four months "after the determination to be reviewed becomes final and binding." N.Y. C.P.L.R. § 217(1). Citing the decision of the New York Court of Appeals in *Solnick v. Whalen*, 401 N.E.2d 190 (N.Y. 1980), Judge Korman of this District has described the circumstances under which Article 78's statute of limitations applies to claims that could have been, but were not, brought via Article 78:

> The New York Court of Appeals addressed this issue in the context of an action for a declaratory judgment in *Solnick v. Whalen*, [401 N.E.2d 190 (N.Y. 1980)]. Specifically, the Court of Appeals held that an Article 78 proceeding was appropriate – and, thus, its statute of limitations applied – where "the object of attack . . . [is] more accurately classified as administrative rather than legislative." *Id.* at [195]. The Court cited cases involving rate increases, ordinances, or laws of general applicability as examples of legislative acts, while it noted that "an ad hoc determination of an individual party's right of reimbursement" is more properly characterized as administrative. *Id.*

*Gansas v. City of N.Y.*, No. 05-CV-601, 2006 WL 5062696, at *1

(E.D.N.Y. July 21, 2006). Relying on *Solnick*, Judge Korman concluded that a § 50-k(3) claim for indemnification is "precisely the type of individual determination that is the hallmark of an administrative decision and was thus appropriate for an Article 78 proceeding," and therefore, that the Article 78 statute of limitations applies to such claims. I agree and find this reasoning equally persuasive with regard to a § 50-k(2) claim for representation. Accordingly, Article 78's four-month statute of limitations applies to third-party defendants' representation claims.[20]

There is no dispute that Corporation Counsel's decision to deny representation became "final and binding" with regard to defendant Yoo on January 2, 2007, the date defendant Yoo received a letter notifying him of the denial. Thus, defendant Yoo was required to file his claim by May 2, 2007. Because the Third-Party Complaint was filed on June 1, 2007, defendant Yoo's representation claims contained therein are untimely and must be dismissed.

The date upon which Corporation Counsel's decision to deny representation became "final and binding" upon defendant Viani, however, is less clear. Defendant Viani asserts that he never

_____

[20] As Professor Siegel has observed: "It is always risky for a claimant with a gripe against a governmental unit of any kind to forgo the Article 78 device in the expectation of getting a longer time for suit by bringing a plenary action of some kind instead. The mistake will often have fatal statute of limitations consequences[.]" David Siegel, New York Practice, § 567 (4th Ed. 2005), *quoted in Gansas*, 2006 WL 5062696, at *2.

received a response to his requests for legal representation, and
appears to argue that, therefore, Corporation Counsel's decision
not to represent him never became "final and binding" because he
never received notice of that decision. *See Damino v. City of
N.Y.*, No. CV-99-3638, 2004 WL 2032515, at *6 (E.D.N.Y. Sept. 13,
2004) (assuming that notice to the complainant is required in
order for a determination to be "final and binding" within the
meaning of Article 78's statute of limitations). The parties'
dispute over this matter[21] is immaterial, however, as the record
reflects that defendant Viani had actual or constructive notice
of Corporation Counsel's decision to deny representation to any
of the individual defendants named in the underlying action as of
January 31, 2007.[22] Accordingly, defendant Viani was required to

_____

[21] Defendant Viani asserts that he requested to be represented by
Corporation Counsel in October of 2005, after plaintiff amended his complaint
and added him as a defendant. The record reflects Corporation Counsel's
position that it never received this request. *See* Docket Entry No. 43
(February 6, 2007 letter from Corporation Counsel to Magistrate Judge Gold
asserting that "this office has never received a request for legal
representation from Sgt. Viani"). However, defendant Viani attaches to his
opposition papers a second request for representation made on February 8,
2007, which refers to a first request purportedly made in October of 2005.
*See* Declaration of John Burns dated May 22, 2009 ("Burns Decl.") Ex. 1 (copy
of defendant Viani's February 8, 2007 request for representation). According
to defendant Viani, he never received formal responses to either request.

[22] In a letter dated February 6, 2007 and addressed to Magistrate Judge
Gold, Corporation Counsel responds to a January 31, 2007 letter written by Mr.
Burns on behalf of defendants Yoo and Viani. *See* Docket Entry No. 43 (copy of
February 6, 2007 letter). The letter notes that while Mr. Burns was not
present at a court conference on January 5, 2007, Corporation Counsel informed
Mr. Burns of the conference date and stated that "the parties intended to
discuss [Corporation Counsel's] determination that it could no longer
represent the individually named defendants in this case." The letter takes
further note of Mr. Burns' "inappropriate suggestion" that Corporation Counsel
had received a request for representation from defendant Viani. While Mr.
Burns' January 31, 2007 letter itself was not made available to this Court,
the February 6, 2007 letter makes clear that defendant Viani had actual or

file his claim by May 31, 2007. Because the third-party

complaint was filed on June 1, 2007, defendant Yoo's

representation claims contained therein are untimely and must be

dismissed.

The second procedural bar to defendants Yoo's and Viani's

representation claims is their failure to serve a notice of claim

on the City in accordance with statutory law. Pursuant to § 50-

k(6) of New York City's General Municipal law:

> No action or proceeding instituted [under § 50-k] . . .
> shall be prosecuted or maintained against the city or any
> agency or an employee unless notice of claim shall have been
> made and served upon the city in compliance with section
> fifty-e of this chapter[23] and within ninety days after the
> claim arises.

N.Y. Gen. Mun. Law § 50-k(6). While the Supreme Court has held

that state law notice-of-claim requirements do not apply to

actions under 42 U.S.C. § 1983, it carefully noted that "federal

courts entertaining state-law claims against . . . municipalities

are obligated to apply the [state's] notice-of-claim provision."

*Felder v. Casey*, 487 U.S. 131, 151 (1988). Accordingly, prior to

bringing their § 50-k(2) representation claims against the City,

defendants Yoo and Viani were required to serve a notice of claim

within 90 days after those claims arose.

---

constructive notice of Corporation Counsel's determination not to represent
the individual defendants in this action at least as of the date of Mr. Burns'
letter.

[23] Section 50-e of New York City's General Municipal law governs, *inter
alia*, the required format and contents of a notice of claim, as well as
acceptable methods of service.

As previously discussed, defendant Yoo's claim arose by January 2, 2007, and defendant Viani's claim arose by January 31, 2007. There is no dispute, however, that defendants Yoo and Viani never served a notice of claim on the City, much less within 90 days of those dates. Accordingly, even if their claims were timely, defendants Yoo's and Viani's § 50-k(2) claims would be dismissed for failure to comply with applicable notice-of-claim requirements.

### 3. *Merits of Representation Claims*

Even if the § 50-k(2) representation claims of defendants Yoo and Viani were not procedurally barred, however, they would still fail on the merits. Defendants Yoo and Viani argue that Corporation Counsel's determination not to represent them in this matter was arbitrary and capricious. Pursuant to § 50-k(2), it is the duty of Corporation Counsel to determine whether a City employee requesting representation was acting within the scope of his or her employment and in compliance with agency regulations in determining whether the employee is entitled to public representation. *See also Williams v. N.Y.*, 476 N.E.2d 317, 318 (N.Y. 1985) ("The issue of whether [a] petitioner's acts were committed within the scope of his public employment and the discharge of his duties raises factual questions. Whether he was so acting and thus was entitled to representation by the Corporation Counsel and indemnification by the city are to be

determined in the first instance by the Corporation Counsel.")
(internal citation omitted).  The New York Court of Appeals has
held that the Corporation Counsel's determination in this regard
"may be set aside only if it lacks a factual basis, and in that
sense, is arbitrary and capricious."  *Id.*

Here, Corporation Counsel based its determination that the
individual defendants were not acting in accordance with agency
regulations, and thus were not entitled to public representation,
on the IAB's findings in its investigative report dated June 22,
2006.  The IAB determined that defendants Yoo and Viani had
violated NYPD rules and regulations by failing to provide medical
assistance to plaintiff at the scene of the incident.  Both New
York state and federal courts have found that such investigative
report findings provide a sufficient factual basis for
Corporation Counsel determinations.  *See Vitucci v. City of N.Y.*,
709 N.Y.S.2d 824, 824 (2d Dep't 2000) ("Contrary to the
petitioners' contention, the report prepared by the Special
Commissioner for Investigation for the New York City School
District provided the Corporation Counsel with a sufficient
factual basis to determine that the acts allegedly committed by
the subject employee were not within the scope of his
employment"); *Ladalia v. City of N.Y.*, No. 92 CV 2951, 1993 WL
217145, at *1-2 (E.D.N.Y. June 2, 1993) (noting that "the report
of the director of the Equal Employment Opportunity Office of the

Department of Correction" provided "a sound factual basis" for
Corporation Counsel's decision under § 50-k). Therefore, the
Corporation Counsel's determination that defendants Yoo and Viani
were not acting in accordance with agency regulations, and thus
were not entitled to public representation, was not arbitrary or
capricious. Accordingly, even if the representation claims were
not barred, they would fail on the merits.

**B.** *Indemnification Claims*

In their First, Third, and Fourth Causes of Action,[24]
defendants and third-party plaintiffs Yoo and Viani further claim
that in the event a judgment or settlement is entered against
them, they are entitled to indemnification pursuant to Section
50-k(3) of New York City's General Municipal Law.[25]  The City

---

[24] Specifically, the First Cause of Action alleges that defendants Yoo
and Viani are entitled to indemnification because they were acting "within the
scope of their employment as New York City Police Officers[.]" Third-Party
Compl. ¶¶ 7-12.  The Third Cause of Action alleges entitlement to
indemnification because the actions of defendants Yoo and Viani were "lawfully
performed in their capacity as a final decision-maker pursuant to the
authority granted [to them] by third-party defendants and in accordance with
the applicable rules, regulations and directives promulgated by third-party
defendants[.]" *Id.* ¶¶ 18-20.  The Fourth Cause of Action alleges that the
City is liable for any judgment entered against defendants Yoo and/or Viani
based on "the knowing, reckless, and/or grossly negligent acts and omissions
of third-party defendants and its supervisory officials in failing to properly
screen, hire, train, supervise, or investigate and discipline the conduct of
New York City Police Officers, including defendant/third-party plaintiffs Yoo
and Viani[.]" *Id.* ¶¶ 21-24.

[25] Section 50-k(3) provides as follows:

The city shall indemnify and save harmless its employees in the amount
of any judgment obtained against such employees in any state or federal
court, or in the amount of any settlement of a claim approved by the
corporation counsel and the comptroller, provided that the act or
omission from which such judgment or settlement arose occurred while the
employee was acting within the scope of his public employment and in the
discharge of his duties and was not in violation of any rule or

argues that these claims are premature because no judgment or
settlement has yet been entered in this matter, and therefore,
that the indemnification claims must be dismissed.  It further
argues that the indemnification claims must be dismissed because
defendants Yoo and Viani failed to serve a notice of claim.[26]

Several courts in this district and the Southern District of
New York have concluded that an exception to the general rule
that claims must ripen before they are filed applies under the
circumstances present here.  As Judge Scheindlin noted in *Harris
v. Rivera*, in which she was called upon to consider whether to
dismiss a § 50-k(3) third-party claim for indemnification filed
prior to trial:

> Claims for indemnification do not generally ripen until a
> judgment in the underlying action is paid.  However, courts
> have created a broad exception to this rule: where
> indemnification is asserted in a third-party action . . .

---

regulation of his agency at the time the alleged damages were sustained;
the duty to indemnify and save harmless prescribed by this subdivision
shall not arise where the injury or damage resulted from intentional
wrongdoing or recklessness on the part of the employee.

N.Y. Gen. Mun. Law § 50-k(3).

[26] In its reply, the City also appears to argue that the indemnification
claims must be brought via an Article 78 proceeding.  Because the City did not
raise this argument in its moving papers, I need not consider it.  *See U.S. v.
Gigante*, 39 F.3d 42, 50 n.2 (2d Cir. 1994) ("These arguments were raised for
the first time in defendants' reply brief.  Arguments may not be made for the
first time in a reply brief."), *vacated on other grounds and superseded in
part on denial of reh'g*, 94 F.3d 53 (2d Cir. 1996).  In any event, I may
exercise supplemental jurisdiction over the indemnification claims for the
same reasons I do so with regard to the representation claims.  I further note
that several federal courts in this Circuit have exercised supplemental
jurisdiction over § 50-k(3) indemnification claims.  *See, e.g., Jocks v.
Tavernier*, 97 F. Supp. 2d 303, 312 (E.D.N.Y), *rev'd on other grounds*, 316 F.2d
128 (2d Cir. 2003); *Banks v. Yokemick*, 144 F. Supp. 2d 272, 285 (S.D.N.Y.
2001); *Harris v. Rivera*, 921 F. Supp. 1058, 1060-61 (S.D.N.Y. 1995).

for the sake of fairness and judicial economy, the CPLR
allows third-party actions to be commenced in certain
circumstances before they are technically ripe, so that all
parties may establish their rights and liabilities in one
action.

*Harris v. Rivera*, 921 F. Supp. 1058, 1062 (S.D.N.Y. 1995)

(citing, *inter alia*, *Mars Assoc. v. N.Y. City Educ. Const. Fund.*,

513 N.Y.S.2d 125, 133 (1st Dep't 1987)).  In *Harris*, Judge

Scheindlin exercised supplemental jurisdiction over the third-

party indemnification claim, but bifurcated the trial,

determining to submit the indemnification claim to the jury only

if it found in favor of the plaintiff.  Other courts have also

found that § 50-k(3) indemnification claims need not be dismissed

prior to trial on ripeness grounds, and have taken a variety of

approaches to addressing the merits of such claims.  *See, e.g.*,

*Jocks v. Tavernier*, 97 F. Supp. 2d 303, 312-14 (E.D.N.Y), *rev'd*

*on other grounds*, 316 F.2d 128 (2d Cir. 2003) (citing *Harris*,

retaining jurisdiction over a technically unripe § 50(k)(3)

indemnification cross-claim, and determining merits of cross-

claim under "arbitrary and capricious" standard as a matter of

law following trial); *Banks v. Yokemick*, 144 F. Supp. 2d 272,

281-87 (S.D.N.Y. 2001) (citing *Harris* and *Jocks* and retaining

jurisdiction over pre-trial § 50(k)(3) indemnification claim, and

further determining to "consider the claim as a matter of law

after the jury has returned its verdict on the plenary action,

and after the City has had a reasonable opportunity, following

its assessment of the evidence at trial, to decide whether or not
it will indemnify[,] . . . as akin to an Article 78 proceeding .
. . apply[ing] the arbitrary and capricious standard of review");
*Hogan v. City of N.Y.*, No. 04-CV-3298, 2008 WL 189891, at *2
(S.D.N.Y. Jan. 18, 2008) (adopting *Banks* approach). *But see
Nevares v. Morrissey*, No. 95 Cov. 1135, 1998 WL 265119, at *5-7
(S.D.N.Y. May 22, 1998) (deeming § 50-k(3) indemnification claims
premature and denying them for failure to state a claim where,
pursuant to § 50-k(5), the City was entitled to refuse
indemnification until still-pending disciplinary charges against
the defendant employees were resolved).

I find the reasoning in *Harris*, *Jocks*, *Banks*, and *Hogan*
persuasive on the ripeness issue, and conclude that under the
circumstances present here, I need not dismiss the third-party
§ 50-k(3) indemnification claims on summary judgment because they
are technically premature.[27] Further, the City's argument that
the § 50-k(3) claims must be dismissed in light of defendants
Yoo's and Viani's failure to serve a notice of claim fails
precisely because the § 50-k(3) claims are technically premature.
Given that there is no evidence that Corporation Counsel has yet
determined whether to indemnify defendants Yoo and Viani, there

_____

[27] I need not and do not here address the issue of how the merits of
defendants Yoo's and Viani's indemnification claims should be considered --
*i.e.*, whether they should be submitted to the jury, and if so, whether the
trial should be bifurcated; or whether I should determine the merits of the
claims as a matter of law following trial -- because the parties have not
briefed this issue and it is not yet properly before me.

is likewise no evidence of any "final and binding" determination on the issue, and therefore, no claim has yet "arise[n]" to trigger the notice-of-claim requirement. *See* N.Y. Gen. Mun. Law § 50-k(6); N.Y. C.P.L.R. § 217(1). Accordingly, the City's motion for summary judgment is denied with respect to the § 50-k(3) indemnification claims of defendants Yoo and Viani.

## CONCLUSION

For the reasons set forth above, the motions of defendants Mangone and Ciurcina are denied with respect to plaintiff's excessive force claims; all defendants' motions are denied with respect to plaintiff's false arrest claim; the motions of defendants Yoo, Viani, and Alfano are denied with respect to plaintiff's denial of medical treatment claim; the motions of defendants Yoo and Mangone are denied with respect to plaintiff's malicious prosecution claim; defendant Ciurcina's motion is granted and defendant Mangone's motion is denied with respect to plaintiff's § 1981 intentional discrimination claim; the motions of defendants Mangone and Ciurcina are granted with respect to plaintiff's § 1985(3) civil rights conspiracy claim; and third-party defendant City's motion is granted with respect to third-party plaintiffs' representation claims and denied with respect to third-party plaintiffs' indemnification claims. The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated:      Brooklyn, NY
            August 18, 2009


                      By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                          United States District Judge